ROBERT S. GABBEY, *et al.,* v. JAMES W. FORGEUS, *as Administrator of the estate of Wm. J. Norris.*

1. WITNESSES, *to State Facts, Not Conclusions.* If proper exceptions are taken, witnesses are not ordinarily permitted to state in general language their conclusions " that a wife did not want to sign a mortgage on her homestead," and that " she was forced to sign the mortgage," and other expressions of similar import. In all cases they should state the facts, recite the declarations of the parties present and participating in the transactions, describe the acts of the parties in interest, and let the jury arrive at their own conclusions.

2. MORTGAGE — *Foreclosure — Defense of Duress, Not Established.* An angry command by the husband to the wife to "Dry up that crying, and go write your name," unaccompanied by threats of personal violence, or any attempt to exercise it, is not sufficient to establish the defense of duress in an action to foreclose a mortgage on the homestead of the wife, in which she alleges that her signature to and acknowledgment of the same was procured by threats of personal violence by her husband, in presence of the mortgagee.

3. DURESS — *Evidence — Instructions, Not Erroneous.* In such a case, when it is stated by the wife that the signature to the mortgage is her genuine signature, and the mortgage is duly acknowledged and certified by a proper officer, it is not error in the trial court to charge the jury that, to sustain the defense of duress by the husband, and that the signature was procured from the wife by threats of violence on the part of the husband, the burden of proof was on those pleading such a defense; nor is it error in the trial court to charge the jury on that state of facts, that such a defense could not be sustained by doubtful, uncertain, unsatisfactory and insufficient testimony.

4. SIGNATURE, *Procured by Compulsion; Evidence.* The due execution of the mortgage being established, it is incumbent on those who seek to avoid the liability created by it, by proof that the signature of the wife was procured thereto by compulsion, to make it clearly manifest that such was the case. The genuine signature and duly-certified acknowledgment of the mortgage cannot be resisted by doubtful and unsatisfactory statements and circumstances; the evidence to impeach it should be strong and convincing.

*Error from Shawnee District Court.*

ACTION to foreclose a mortgage. Trial at the October Term, 1884, and verdict and judgment for defendant *Norris.* Defendants, *Gabbey* and wife, bring the case to this court. The material facts are stated in the opinion.

*A. H. Case,* for plaintiffs in error.

*W. P. Douthitt,* and *Vance & Campbell,* for defendant in error.

Opinion by SIMPSON, C.: This was an action to foreclose a mortgage on one hundred and sixty acres of land in Shawnee county. The land was the homestead of Robert S. Gabbey and his wife Annie W. Gabbey, who resided thereon. The suit was instituted by R. T. Lee, who claimed a mortgage thereon, and he made William J. Norris, who claimed a second mortgage lien thereon, a party defendant. Norris answered, and filed a cross-petition, claiming that the defendants, Robert S. Gabbey and Annie W. Gabbey, executed and delivered to him a mortgage on the same land to secure a note for $1,500, dated April 9, 1872, due in twelve months thereafter, with interest at the rate of 12 per cent. per annum, the note signed by the husband, the mortgage signed and acknowledged by both husband and wife, and asking that it be declared a lien, and be foreclosed. Annie W. Gabbey filed an answer to the cross-petition of Norris, in which she alleged her homestead rights in the land; that more than the sum of $3,000 of the purchase-money of the land had been her personal property derived from the estate of her father; that her signature to the mortgage was procured by fraud of both her husband and

Norris, and was by force and violence as well as by fraud, extorted from her by her husband, with the full knowledge of Norris; that the fraud and violence spoken of consisted of threats of personal violence by her husband if she did not sign the mortgage, and of actual force; that without this fraud and threat of personal violence, she would not have signed the mortgage. She asked that the mortgage be declared void, and her answer was verified by her oath. The case was tried by a jury. The assignments of error are various exceptions to the rulings of the trial court in excluding testimony, and many exceptions to the instructions of the court to the jury. The jury found for Norris, and the court overruled a motion for a new trial. The exceptions to the exclusion of testimony are quite numerous, but all are of the same class, a few instances giving a general idea of the whole. E. E. Abbott, a witness for Mrs. Gabbey, stated in his deposition: "Annie W. Gabbey did not want to sign the mortgage, because it was on her homestead, but her husband insisted that she must do it, and forced her to sign it against her will." The refusal of the court to permit this sentence to be read to the jury is assigned as error. It is very evident that this is but a statement of the conclusions of the witness, and not a recitation of facts showing the acts and declarations of Mrs. Gabbey respecting the mortgage and what acts or declarations of Gabbey had forced his wife to sign. The

1. Witnesses to state facts, not conclusions.

same witness recited what was done at the time of the signature, and commented on the "excitement and distress" of Mrs. Gabbey, and added, "and we all pitied her." This was very properly excluded.

Mrs. Gabbey testified: "I also swear that my signature to the mortgage now held by Wm. J. Norris on my homestead was not my voluntary act and deed, but was only obtained through fear of personal violence on the part of my husband." This was excluded, because she did not attempt to state what particular acts of her husband caused the fear of personal violence. There are perhaps two instances in which the facts stated by the witness ought to have gone to the jury, but they

were not important and controlling enough to be considered material errors. Apart from these two instances, the court seems to have been unusually liberal in the allowance of testimony to the jury, and especially so in the case of Dr. Gabbey and his wife. The instructions are criticised, and much complaint is made of the eighth, ninth, tenth, eleventh, and twelfth. The instructions complained of are as follows:

"8. Now if you find from the evidence that the defendant Annie W. Gabbey did sign the Norris mortgage, but that she signed it under compulsion or coercion on the part of her husband, Robert S. Gabbey; and that the acts of the defendant Robert S. Gabbey, which caused and induced her to sign this mortgage, were such as to make the act on her part wholly involuntary; and that the threats and conduct of her husband, Robert S. Gabbey, were such as to reasonably create in her mind a fear of personal injury if she disregarded his demands; and that under these circumstances, and that because and by reason of such fear produced and induced by the violent actions and conduct of her said husband, Robert S. Gabbey, she did sign the mortgage, then, and under such circumstances, such signing and acknowledgment would constitute a legal defense against the defendant Broaddus, as executor of the Norris estate in this action; and under such circumstances your verdict should be for the defendant Annie W. Gabbey; and that the defendant Broaddus, as executor of the Norris estate, had not a lien for the payment of the debt due him from Robert S. Gabbey upon the land described in said mortgage. Now, in order to make duress or compulsion effective as a defense in this action, and sufficient to invalidate the Norris mortgage, the compulsion must have been so great as to take away the voluntary consent of the defendant Annie W. Gabbey, because her consent to the signing and acknowledging the instrument must have been voluntary, and therefore the compulsion must have been of such a character as to excite a sense of fear on her part of some grievous wrong, as of death, or of personal violence, or great bodily injury, or unlawful imprisonment. It is not enough that she signed the mortgage reluctantly or hesitatingly simply, or that she signed it under protest, or even against her best judgment; but it must have been such a compulsion as would in fact destroy for the time being her freedom of action, and overcome her ordinary powers of resistance; then, and if you so find that there was such compulsion used

by her husband, Robert S. Gabbey, to induce her to sign the mortgage, and that under and by virtue of such compulsion she did sign and acknowledge it, then your verdict should be that the defendant Broaddus, as executor of the Norris estate, has not a lien upon the land described in his answer and cross-petition for the amount due upon the promissory note sued upon by him.

"9. I further instruct you, that when a mortgage regular in appearance and bearing the genuine signature of the person, and such mortgage is duly acknowledged and certified by the mortgagors or grantors, and such mortgage is attacked to avoid liability thereunder, the evidence must be clear and convincing, and in such a case the burden of proof rests upon the party disputing the liability, of overcoming the presumption of validity arising from the terms of the written instrument of that character; and in such case, if the proof is doubtful, uncertain and unsatisfactory, and insufficient to overcome the presumption of validity, then it should be held that the writing correctly and fairly states the intentions of the parties, and testimony sufficient to destroy a written instrument, signed, acknowledged and delivered, as I have already stated, should be plain and convincing beyond all reasonable controversy.

"10. If you believe from the evidence in the case that Annie W. Gabbey did not sign the Lee mortgage, then your verdict should be for the defendant Annie W. Gabbey, as to that mortgage. And I further instruct you, that if you find that she did not sign or acknowledge it originally, that the evidence in the case shows no such ratification as would bind her and make it her own act; and if you find from the evidence that the land mentioned in the Norris mortgage was the homestead of Robert S. Gabbey at the time of the execution of the Norris mortgage, and that it did not exceed one hundred and sixty acres of farming land, and that it was occupied by the defendant Robert S. Gabbey as the residence for himself and his family; and if you further find that Mrs. Gabbey signed the Norris mortgage, but that she signed it through compulsion on the part of her husband, and such a compulsion as I have hereinbefore described, then you will find for her as to the Norris mortgage. And I further instruct you, that if you find from the evidence that the defendant Annie W. Gabbey did not give her consent to the execution, that is, to the signing, acknowledgment and delivering of the Norris mortgage, but that she signed it through fear of her husband, that he would do her bodily harm or personal vio-

lence if she did not sign it, then, and under such circumstances, the jury should find for the defendant Mrs. Gabbey.

"11. I further instruct you, that if you find from the evidence that Annie W. Gabbey signed the Norris mortgage under such circumstances as would in law amount to duress and compulsion, as I have hereinbefore instructed you, then you will find a verdict for her as to the Norris mortgage; and under such circumstances it would be wholly immaterial whether Norris acted in good faith or not.

"12. I further instruct you, that under the exercise of reasonable fear of violence, which would in fact overcome the power of reason, or the power of voluntary action on the part of Annie W. Gabbey, under the circumstances in which she may have been placed at the time of the signing of the Norris mortgage, would be sufficient in law to invalidate the mortgage as to her; and the word consent as I have used it in these instructions means the voluntary act, free and voluntary act, and not an involuntary act procured by the violence of another. So, if she signed the Norris mortgage under such duress or compulsion as I have described, then she never gave that consent to the alienation of the homestead that the law requires and recognizes."

To the giving of the foregoing instructions the defendants, Robert S. Gabbey and Annie W. Gabbey, duly excepted. These instructions taken together, each modifying the others, very fairly presented the law upon the subject of duress, if this question was presented by the evidence. The record before us contains all the evidence presented. Both Mr. and Mrs. Gabbey testified in the case, and were permitted to give their version of the facts attending the signature and acknowledgment of the mortgage. Mrs. Gabbey said:

"On the morning of April 9, 1872, Wm. J. Norris, C. W. Higginbotham, Dr. R. S. Gabbey, my husband, came to my house, Norris and Higginbotham remaining in the south room or parlor, and the Doctor passed into the north room, where I was crying, for fear I should be compelled to sign a mortgage on the homestead. The Doctor approached, and in a very angry and threatening manner said, 'Dry up that crying, and go write your name.' I went into the parlor at his command, spoke to no one, neither did anyone speak to me; the Doctor followed behind me. I took the pen and signed some paper

without reading it, or knowing positively what it contained; the papers were then folded up and the parties went away."

Dr. Gabbey said that his wife did not sign the mortgage of her own free will, but did so at his command.

Higginbotham, the notary who drew the mortgage and took the acknowledgment, said:

"Mrs. Gabbey was not in the room when we first went to the house; Dr. Gabbey went out of the room, and she came back with him; I do not remember her saying anything; she was very much distressed, and tears were on her cheeks and she was crying; my impression is she used the words, 'This is the last.' I cannot say that I told her it was a mortgage. I will not say that she said that 'This is the last,' or that she said anything; my best recollection is that I did not ask her if she signed it of her own free will. I saw nothing to show that she did not want to sign it, except the shedding of tears and sobbing."

This is the sum and substance of all the testimony offered upon the defense of duress. Perhaps the most liberal expression of the analogous doctrine of cruelty that has judicial sanction is the view of this court expressed in the case of *Carpenter v. Carpenter*, 30 Kas. 712. It may not be applicable in any or all of its phases to such a case as we are considering, but they are kindred questions, and every consideration prompts us to deal with the rights of the wife in the homestead with as much liberality as we do questions affecting her marital rights. We have no doubt but that cases can be presented wherein the husband, by many acts of omission or commission and without resort to threats or to actual personal violence, can so conduct himself as to create such an apprehension on the mind of his wife, as separation from her, the loss of the presence and society of her children, the destruction of the home feeling, and a hundred other such manifestations of ill-feeling as to cause duress, and to cause in her mind the belief that if she does not sign away her rights or incumber them, one of these to her most important things will happen. If such a case were presented, the doctrine of duress might be illustrated by a novel state of facts. So far, we have not had

occasion to determine whether such acts would constitute duress or not.

In the only two cases passed upon by this court wherein mortgages are held void because of the duress under which the wife signed, we find only the most ordinary examples of brutality on the part of the husbands. In the case of *Anderson v. Anderson,* 9 Kas. 112, when the wife declined to promise to sign the deed to the homestead, the husband struck her with his fists on the head three times, and pulled her hair. Then in the evening he brought the ax into the house, sharpened a large knife, and was very angry, and said that in the morning he was going to get 'Squire Streeter to take the acknowledgment of the deed. In the case of *Helm v. Helm,* 11 Kas. 19, the duress consisted of threats on the part of the husband and the purchaser to take the life of the wife if she did not sign the deed, and in apprehension of great danger from such threats she signed.

In this case the wife does not claim that the husband either exercised or threatened to exercise any personal violence, but commanded her in an angry tone to "Dry up, and sign her name." This is too indefinite to come within the most liberal interpretation of duress. It will be seen from an examination of these instructions that the trial court covered almost every phase of the question of duress, and the jury could have, consistent with the instructions, found it, if it had been in the case. Particular criticism is directed against instruction nine, for the supposed reason that the court intimates that the evidence offered in support of the defense of duress is "doubtful, uncertain, unsatisfactory, and insufficient." We do not think that is the fair meaning of the language used by the court, or that it is susceptible of the construction placed upon it by counsel. It is not only a fair statement of the law applicable to the state of facts established by the evidence, but it is supported by excellent authority. (See *Smith v. Allis,* 52 Wis. 344; *Insurance Co. v. Nelson,* 13 Otto, 544.)

Another objection to the instructions is, that the court erred

in its statement that the burden of proof rested upon Mrs. Gabbey. It must be recollected that at the time this instruction was given the fact presented by the evidence was that the signature to the mortgage was the genuine one of Mrs. Gabbey, and the precise question was whether or not that signature was the result of duress exercised by her husband. Of course when she had stated on the witness stand that she had signed the mortgage, the burden of proving that her signature was not freely and voluntarily made rested on her. This is not a question as to which party had the burden on the pleadings, but it arises after the facts have gone to the jury. The due existence of a written instrument having been established, it was incumbent on those who sought to avoid the liability created by such instrument, by proof that the signature thereto was obtained by compulsion, to make it clearly manifest that such was the case. The genuine signature and duly-certified acknowledgment of the mortgage could not be resisted by doubtful and unsatisfactory statements and circumstances. The evidence to impeach them should be strong and convincing.

4. Duress; burden of proof.

We will not go the extent of saying that such evidence must establish the fact of coercion "beyond a reasonable controversy," as is stated in the conclusion of the ninth instruction, because it is using an expression that might be a subject of varied construction; and yet the language is used by the supreme court of the United States in a similar case, and we do not hold that its use is error in this case.

There is no material error in the record, and it is recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.