THE PEOPLE'S GAS COMPANY *et al., Appellants,* v. JOSEPH FLETCHER *et al., Appellees.*

No. 16,020.

### SYLLABUS BY THE COURT.

1. WRITTEN INSTRUMENTS—*Evidence of Execution—Certificate of Acknowledgment—Parol Evidence.* A certificate of acknowledgment made by an officer authorized to take acknowledgments is only *prima facie* evidence of the execution of the instrument, and while it is entitled to a strong presumption in favor of its truth it may be impeached by parol testimony.

2. —— *Denial of Execution—Testimony of Parties.* Where the parties have actually appeared and signed an instrument, and afterward attempt to contradict the certificate as to what took place, the evidence to impeach the acknowledgment must be clear and convincing. (*Gabbey v. Forgeus, Adm'r*, 38 Kan. 62.) But where the parties deny the execution of the instrument and claim neither to have signed nor acknowledged it, their testimony is admissible to impeach the certificate and will be entitled to as much weight as that of any other interested witness.

3. EVIDENCE—*Trial to the Court—Questions Submitted to Jury —Weighing Testimony.* In a case tried by the court, where the court submits questions of fact to the jury in an advisory capacity and adopts their findings, it will be assumed that the court gave proper weight to all the competent evidence.

4. SPECIAL FINDINGS — *Sufficiency—Waiver—General Finding Sufficient.* In a case tried by the court, where the court makes special findings in favor of the defendants and finds generally on all the issues in their favor, and renders judgment accordingly, and some of the special findings appear to be insufficient to support the judgment, and the plaintiffs have neglected to ask the court to make further findings or to modify those made, the special findings will be disregarded and the general finding held sufficient to support the judgment.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed November 6, 1909. Affirmed.

STATEMENT.

THE plaintiffs sought to enjoin Fletcher and wife and Yoke from operating for oil or gas or removing the same from land belonging to the Fletchers. The petition alleged that on September 4, 1899, Joseph and Matilda Fletcher executed and delivered to the Pennsylvania Oil Company, a partnership, an oil-and-gas lease to the northwest quarter of section 20, in township 34 south, of range 16 east of the sixth principal meridian, in Montgomery county, Kansas, for a period of ten years from that date, and as much longer as oil or gas should be produced in paying quantities, and that by subsequent assignments the lease became the property of the plaintiffs. The lease provided that if no oil or gas well should be sunk on the premises within twelve months the lease should become null and void, unless the second party should pipe gas to within one hundred feet of the residence of the parties of the first part and give them the right to use gas in consideration of the terms of the lease until a well should be drilled. The petition alleged a compliance by the plaintiffs with the terms of the lease,. and that in October, 1905, the Fletchers executed and recorded a lease to defendant Yoke covering the same premises, which Yoke accepted with full knowledge of the rights of the plaintiffs, and that he had erected a derrick on the premises for the purpose of boring for oil and gas, and prayed that defendants be enjoined from operating under the second lease.

Defendants Fletcher and wife filed an answer, in which each denied under oath the execution of the lease described in the plaintiffs' petition. They further answered that the premises in controversy had been at all times their homestead, and were then so occupied; that the Pennsylvania Oil Company had not drilled a well of any kind on the premises within twelve months of the date of its alleged lease, and had failed to pipe gas to within one hundred feet of the residence of the

answering defendants or supply them with gas within twelve months from September 4, 1899. They asked judgment against the plaintiffs declaring the lease set out in the petition to be null and void, and that their title to the premises be quieted.

The plaintiffs filed replies in which they sought to avoid the failure to pipe gas to the residence of the Fletchers within the twelve months, and alleged that in October, 1900, a short time after the year expired, the Pennsylvania company, with the knowledge and consent of the Fletchers, piped gas to their residence, and that the company and its assigns had continuously from that time furnished gas to them for domestic purposes under the terms and conditions of the lease, by reason of which facts it was alleged the Fletchers had ratified and confirmed the lease and were estopped from contesting its validity.

At the trial, which was before the court and a jury, the plaintiffs introduced the original lease under which they claimed, signed "Joseph Fletcher and Anna M. Fletcher," and certified as acknowledged before J. F. McCorkle, a notary public. The notary was dead at the time of the trial and his signature was proved. A number of handwriting experts examined the signature of Mrs. Fletcher to the original lease and compared it with her signature to the affidavit denying the execution of it, and testified that in their opinion both signatures were written by the same person.

The foreman of the oil company testified that he had charge of the men who laid the pipe from the main line to within about twenty-five feet of the Fletcher residence; that they laid approximately 1500 or 2000 feet; that he saw Mr. Fletcher on the farm at the time and talked with him about where he wanted the line laid and it was laid at the place designated by Mr. Fletcher, and that Fletcher at no time by act or word made any objection to laying the pipe. Several other witnesses testified to substantially the same facts, and there was

abundant testimony that the Fletchers piped the gas into the house and used it for domestic purposes.

In the original lease the description of the land was in typewriting. It appeared upon examination that there had been an alteration of the number of the section from 24 to 20, by writing over the figure 4 a cipher· with pen and ink. Joseph Fletcher admitted his signature to the original lease, but contended that this alteration had been made after he signed and acknowledged it, and for this reason it was void as to him. He· admitted that he intended to sign a lease for the land in section 20, and that this was the intention of the notary. He testified that he signed and acknowledged the lease while in the cornfield; that it was executed in duplicate; and that after he had .signed it McCorkle went to the house. Mrs. Fletcher testified that McCorkle came to the house with the lease and said that her husband had signed it, and asked her for a tax receipt; that she brought him one, and went about her household duties; and that after doing some writing· McCorkle went away without asking her to sign the lease, and that she had neither signed nor acknowledged it and would not have done so if he had requested it, as she was not satisfied with its terms. The testimony also showed that some weeks after this Joseph Fletcher received by mail a copy of the lease, and noted for the first time that the description of the section was wrong· and that it purported to be signed by his wife; that acting for himself and wife he notified the manager of· the Pennsylvania Oil Company that the description was wrong, that his wife had never signed the lease, that she was not satisfied with the terms of it, and that it was void; that the manager said he would prepare another lease that would be satisfactory, but never did so. He also testified that he had informed the manager of· the People's Gas Company of the same facts and had an understanding with him that nothing would be done until a new lease was made out; that when the em-

ployees of the Pennsylvania Oil Company brought the pipe to the place he told them that they had no lease and went to the house and showed them his copy, in which it appeared that the year had expired; that the foreman said he would leave the pipe there over night and go back and inform the company; that afterward the pipe was removed, but without his knowledge was taken to another part of the farm, and the line laid in his absence; that he knew nothing about it until he returned. Some of the employees of the company who laid the pipe testified that, acting under the instructions of the manager of the company, they hauled the pipe away and brought it back and strung it along at another place on the farm, and afterward went there and made the connection. Mrs. Fletcher testified that her husband was away when the pipe was brought back and that she did not discover that the workmen were there until the pipe was laid; that there was a grove of trees between the house and where they were working. Both the Fletchers testified that they used the gas with the understanding that the company would carry out its promise and procure a new lease on satisfactory terms, and with no intention of accepting or ratifying the former lease.

The court submitted certain special questions to the jury, which were answered as follow:

"(1) Ques. Was the lease from Fletcher and wife to the Pennsylvania Oil Company, which is marked "Exhibit C," altered or changed as to that portion of the description with reference to the number of the section before or after the signing and acknowledgment of the lease? Ans. After.

"(2) Q. Did Mrs. Fletcher sign the lease? A. No.

"(3) Q. If you answer question No. 1 by saying that the lease was changed after it was signed and acknowledged, when, if at all, did Fletcher and wife first learn that such change or alteration had been made? A. Some time after copy of lease was returned to Fletcher and wife.

"(4) Q. If you answer question No. 2 by saying that the lease was changed and the addition of the signature

of Mrs. Fletcher after it had been signed and acknowl-
edged, when, if at all, did the defendants Fletcher and
wife first learn that such change or alteration had been
made? A. When Fletcher and wife read copy of the
lease.

"(5) Q. If you say the lease was changed, did Mr.
Fletcher consent to the change? A. No.

"(6) Q. If you say that the lease was changed, did
Mrs. Fletcher consent to the change? A. No."

The court adopted the findings of fact made by the
jury, and, in addition, found all the issues in favor of
the defendants and against the plaintiffs, and rendered
judgment as prayed for in the cross-petitions; and this
judgment the plaintiffs seek to reverse.

*W. E. Ziegler, J. H. Dana, Eugene Mackey,* and *John
J. Jones,* for the appellants; *Jones & Reid,* of counsel.

*Luther Perkins,* for appellees Joseph Fletcher and
Matilda Fletcher; *Charles D. Welch,* for appellee A. J.
Yoke.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs' main contention is that
as to innocent purchasers the certificate of acknowl-
edgment of an instrument regular on its face can not
be impeached by the uncorroborated testimony of the
interested parties. The rule contended for may ob-
tain in a certain class of cases in those states where the
act of acknowledgment is regarded as judicial, but
manifestly such a rule has no place in Kansas. In this
state the person taking the acknowledgment acts in a
ministerial, and not in a judicial, capacity. (*Heaton v.
Bank,* 59 Kan. 281, 289.) Even in those states where
the certificate is held to be conclusive of every fact ap-
pearing on the face of the certificate which the officer
is by law authorized to certify, and where it is held
that evidence of what passed at the time of the ac-
knowledgment is inadmissible to impeach the certifi-
cate except in case of fraud or imposition, the cer-

tificate may always be impeached by proof that the party did not in fact appear before the officer certifying to the acknowledgment nor otherwise acknowledge the instrument. (*Michener and Wife v. Cavender*, 38 Pa. St. 334; *Le Mesnager v. Hamilton*, 101 Cal. 532; *Grider v. American Freehold Land Mortgage Co.*, 99 Ala. 281; *Meyer v. Gossett*, 38 Ark. 377; *Wheelock v. Cavitt*, 91 Tex. 679; *Johnston v. Wallace*, 53 Miss. 331.)

In volume 1 of the Cyclopedia of Law and Procedure, at page 622, it is said:

"Where, in fact, the grantor has never appeared before the officer and acknowledged the instrument, evidence to show that the certificate, though regular on its face, is a forgery or an entire fabrication of the officer is admissible, even as against an innocent purchaser for value and without notice."

While the certificate of acknowledgment is entitled to a strong presumption in favor of its truth, in this state it is only *prima facie* evidence of the execution of the instrument. (*Wilkins v. Moore*, 20 Kan. 538; *Heil v. Redden*, 45 Kan. 562; *Heaton v. Bank*, 59 Kan. 281.) The following language from the opinion by Mr. Justice Brewer in *Wilkins v. Moore*, supra, while dictum in that case, is undoubtedly a correct statement of the law: "Of course, the matter is still open for further testimony, either written or oral, for the acknowledgment is not conclusive evidence." (Page 540.) In section 534 of volume 1 of the second edition of Devlin on Deeds it is said:

"The certificate standing by itself, without other proof, is *prima facie* evidence of all that it rightfully contains. While not conclusive, it is entitled to the utmost consideration."

With respect to the character of proof necessary to overcome the certificate of an acknowledging officer, where the parties have actually appeared and signed an instrument and afterward attempt to contradict the certificate as to what took place, the rule is that the

evidence to impeach the acknowledgment must be clear and convincing. (*Gabbey v. Forgeus, Adm'r,* 38 Kan. 62.) There the wife admitted her signature to the instrument and it was duly acknowledged and certified by a proper officer. It was held that to sustain the defense of duress the burden of proof was on the wife, and that "the genuine signature and duly certified acknowledgment of the mortgage could not be resisted by doubtful and unsatisfactory statements and circumstances; the evidence to impeach them should be strong and convincing." (Syllabus. See, also, *Winston v. Burnell,* 44 Kan. 367.) Here the wife denies the execution of the instrument and alleges that she neither signed nor acknowledged it. Her testimony was competent, and stands as the testimony of any other interested witness. The general rule is stated in volume 1 of the Cyclopedia of Law and Procedure, at page 624, as follows:

"The testimony of parties to the suit, while carefully scrutinized, is admissible to impeach the certificate and is entitled to the same weight as that of any other interested witness."

Moreover, the testimony of Mrs. Fletcher was not wholly uncorroborated. There were circumstances in connection with it which may have had more or less weight with the court in determining its truth. The husband testified that she was not present when he signed the lease. The original instrument was in evidence and compared with her own signature, and there was a variance in the spelling of her name as it was written in different parts of the instrument and the acknowledgment.

On the trial the court called a jury in an advisory capacity and submitted to them certain special questions, and gave an instruction that the burden was on the plaintiffs to prove the due execution of the lease by the fair weight and preponderance of the evidence. It is claimed that this was error and that the court evi-

dently misconceived the law, and, in adopting the findings, failed to give proper weight to the evidence. Conceding that the instruction was erroneous, it has been often held that the disposal of the burden of proof is of slight importance, and where all the evidence has been introduced it becomes immaterial where the burden rests. (*McCormick v. Holmes,* 41 Kan. 265; *Milling Co. v. Ellis,* 76 Kan. 795.) The procedure followed in this case is a fair illustration. The plaintiffs assumed the burden at the outset and offered the evidence of expert witnesses to prove that the signature of Mrs. Fletcher was genuine. The case was tried by the court, with the aid of a jury, and, since all the evidence either side had to offer was introduced, it will be assumed that the court, in adopting the findings of the jury, gave proper weight to all the competent evidence.

We have carefully examined the claim of error in the admission of evidence and find nothing which would warrant a reversal. The questions objected to were proper cross-examination.

It is quite apparent that the court attached considerable importance to the defense that the lease was altered after it was signed and acknowledged. Five of the six questions submitted to the jury hinged upon the fact of alteration, and the court adopted the findings, which were all against the plaintiffs on that issue, which was wholly immaterial if the plaintiffs' contentions are correct as to the law in respect to the alteration of written instruments. If it were necessary to decide the question, we would be inclined to hold with the plaintiffs that since Joseph Fletcher testified that it was his intention at the time he executed the lease, and also the intention of the notary, to have the lease cover the northwest quarter of section 20, and it appeared beyond question that the figure 4 in the typewritten lease was the result of a mere typographical error, the alteration was not such a one as would

avoid the instrument, because it was a correction which expressed the intent of both parties and was not a material alteration. (2 Cyc. 148, and cases cited.)

There are reasons, however, which render it unnecessary to consider or determine what kind of alterations will avoid a written instrument of this character. Irrespective of whether the Fletchers were either or both of them bound by the lease, there still remained the other defense that the plaintiffs had failed to comply with its terms. They admitted their failure to comply within the time stipulated and sought to avoid the effect thereof by showing facts constituting a waiver and estoppel on the part of the Fletchers. This raised an issue of fact, upon which the evidence was conflicting, the Fletchers contending that they used the gas, not with the intent to ratify the lease, but relying upon the promises of the plaintiffs to have a new and satisfactory lease executed.

The court found all the issues in favor of the defendants. If there had been a special finding in favor of the plaintiffs on the question of estoppel, the general finding would have been narrowed down so as to appear conclusively to rest on the defense of alteration. But there is no special finding on that issue, and the plaintiffs neglected to ask the court to make further findings or to modify those made. They are therefore bound by the findings which the court did make. (*Cowling v. Greenleaf,* 33 Kan. 570; *Shuler v. Lashhorn,* 67 Kan. 694.) There was evidence sufficient to support a finding that the Fletchers were not estopped, and a finding to this effect is necessarily included in the general finding of the court, from which there is no escape for the plaintiffs.

The judgment is affirmed.