Alma State Bank, hereafter referred to as the bank, prosecuted this suit against A. J. Lummus and wife, Laura Lummus, for the recovery of a certain house and lot in the town of Alma in Ellis county, Tex., fully described in the bank's pleading. The bank sought to recover said property by virtue of what purported upon its face to be a warranty deed, duly executed by Lummus and wife, dated January 22, 1922, conveying said property to J. W. Richards, and by deed from Richards to the bank. Lummus and wife contended that said purported deed to Richards was intended as a mortgage; that they understood it to be a mortgage to secure $2,400, which they owed the bank, and that it was so explained to Mrs. Lummus, and at the time she signed same she thought it was a mortgage; that she never acknowledged said instrument, etc. It was admitted that, at the time said instrument was signed, purporting to convey said property to Richards, and by him deeded to the bank, that same was and had for many years been the homestead of Lummus and wife, and they sought in a cross-bill to have said instrument canceled, as a cloud upon the title to their homestead. In response to special issues, the jury found:
"(1) That, at the time A. J. Lummus executed the instrument, purporting to be a deed from himself and wife to J. W. Richards, of date January 22, 1922, he did not believe said instrument to be a mortgage to secure a debt, and not an absolute conveyance.
"(2) That, at the time Laura Lummus executed the instrument in question, she did not intend and believe the same to be an absolute conveyance of the premises described therein to the bank.
"(3) That, at the time Laura Lummus executed the instrument in question, she did intend and believe the same to be a mortgage to secure indebtedness of her husband, A. J. Lummus, to the bank.
"(4) That A. J. Lummus did represent to his wife, Laura Lummus, before she executed the instrument in question, that the Alma State Bank was asking that they execute a mortgage on the premises in question to secure the debt he then owed said bank.
"(5) That neither J. W. Richards nor D. B. Munsey caused or requested A. J. Lummus to represent or explain to his wife, Laura Lummus, that the instrument to be signed by her was a mortgage and not an absolute deed.
"(6) That the defendant Laura Lummus did rely upon the representations made to her by her husband.
"(7) That Geo. W. Collard, the notary public, did not examine the defendant Laura Lummus separate and apart from her husband, and he did not explain said instrument (the purported deed) to her, and she did not acknowledge before him that she had executed the same as her act and deed, for the purposes and consideration therein expressed, and she did not declare that she had willingly signed the same, and that she did not wish to retract it.
"(8) That J. W. Richards did not, by any statement, act, or conduct of his, cause said notary to fail to fully explain said instrument to Laura Lummus, separate and apart from her husband, and to fail to acknowledge to said notary that she had executed said instrument for the purposes and consideration therein expressed, and declare to him that same was her act and deed, and that she had willingly signed the same, and that she did not wish to retract it.
"(9) That, in the negotiations, as shown by the evidence, between J. W. Richards and the defendant A. J. Lummus, leading up to and culminating in the execution of said instrument, the said J. W. Richards was not acting solely in his individual and personal capacity and interest in making a deal for said premises with A. J. Lummus.
"(10) That the said J. W. Richards, in the negotiations with A. J. Lummus leading up to the execution of said instrument, was representing the Alma State Bank under instruction of the board of directors or its officers to endeavor to secure better or additional security for the alleged indebtedness of the said A. J. Lummus to said bank."
In response to special issue No. 2, given at the request of the bank, the jury found:
"The Alma State Bank was an innocent purchaser for paid value of the land described in the deed from A. J. Lummus and wife to J. W. Richards, without notice that the notary public failed to perform his duty as required by law; and that said deed was intended as a mortgage by the said A. J. Lummus and wife and J. W. Richards."
Upon the above findings of the jury, the court entered judgment awarding a recovery of the land to the bank, and refusing Lummus and wife any relief on their cross-bill. Lummus and wife, as plaintiffs in error, present the record here for review.
We will first briefly dispose of some preliminary motions. The record discloses that on December 15, 1927, after appeal had been perfected and the record filed in the appellate court, the bank filed a motion in the appellate court to dismiss the appeal, strike out the transcript, statement of facts, and assignments of error, upon the ground that the record failed to show that the amended motion for new trial by Lummus and wife was ever acted upon and overruled by the trial court. When this motion became known to attorneys for Lummus and wife, said attorneys filed a motion in the trial court, under oath, on January 3, 1928, in due form, alleging that their amended motion for new trial was duly presented to the trial court on May 14, 1927, and that same was by the court on the same date overruled, but that the court had inadvertently failed to enter its order so showing, and attached a copy of the order that should have been entered on said date, and prayed that said order then, as of date May 14, 1927, be entered, and requested that the question as to whether the court on said date did announce that he overruled said motion be submitted to a jury. The *Page 197 
bank objected to said issue being submitted to a jury. The trial court overruled the objections of counsel for the bank, and submitted to a jury duly impaneled the question as to whether or not the trial court did, on May 14, 1927, in open court, state that he overruled defendant's amended motion for a new trial and failed to note such ruling on his docket. The jury, after hearing the evidence, answered in the affirmative; whereupon the trial court granted said motion of Lummus and wife, and entered his order as of May 14, 1927, overruling their amended motion for new trial, after which Lummus and wife filed in this court a motion for a writ of certiorari to bring to this court a certified copy of said order of the trial court — a supplemental transcript containing said order entered nunc pro tunc, and all proceedings by which same was obtained, being attached to said motion — whereupon the bank filed in this court a motion to strike out the order entered nunc pro tunc, because, as to whether the court overruled said amended motion on May 14th, 1927, was a matter that should have been passed upon by the court, and the court erred in submitting such issue to a jury. So all of said motions are now before us for decision, and we think their disposition should be determined by a decision of the above-suggested question.
Ordinarily, where an order or judgment is alleged to have been rendered by a court, but not entered of record, and an application is presented to such court at a later date to have such judgment or order entered nunc pro tunc, or as of the date same was actually rendered, the court decides the question as to whether or not he actually made such decision as alleged, because the court is usually in position to determine the matter from his own recollection or from some data in the record. But the court may not remember, and may have no data to refresh his memory, and such question may become, as we think it did on the hearing involved in this proceeding, a question of fact to be decided upon the evidence of others, in which case we see no reason why the court should not, if he so elects or is requested by a party to the proceeding, submit such issue of fact to a jury. It was at least entirely within the province and discretion of the court to determine in what manner it would satisfy itself of the fact that it did overrule said amended motion for rehearing on May 14, 1927, and is a matter not subject to revision by this court. 42 C.J. p. 506. We grant the application by Lummus and wife for certiorari to correct the record, and overrule the bank's motion to dismiss appeal, etc., and also its motion to strike out the supplemental transcript.
As above stated, the jury found that, at the time Mrs. Lummus signed the purported deed, she did not intend and believe same to be a deed of conveyance to J. W. Richards, but that she did intend and believe the same to be a mortgage to secure her husband's indebtedness to the bank. The jury also found that the notary, Geo. W. Collard, did not examine the wife, Laura Lummus, separate and apart from her husband; that he did not explain said instrument to her; that she did not acknowledge before him that she had executed the same as her act and deed for the purposes and consideration therein expressed; that she did not declare that she had willingly signed the same; and that she did not wish to retract it. In other words, the notary made no attempt to take her acknowledgment. The bank makes no objections to the above findings on any ground. The undisputed evidence establishes the following facts beyond controversy: Prior to and at the time the purported deed was made to J. W. Richards, A. J. Lummus was indebted to the Alma State Bank in the sum of at least $2,400. J. W. Richards was cashier of said bank. The board of directors of said bank instructed its cashier, J. W. Richards, to get additional security for the A. J. Lummus indebtedness to said bank, and, in pursuance of said instructions, the said cashier, as a representative of the bank, as found by the jury, entered into negotiations with A. J. Lummus, which led up to and culminated in the purported deed. The president of the bank wrote said deed to Richards. The deed from Lummus and wife to J. W. Richards recited a cash consideration of $2,400 in hand paid to them, but nothing was paid. On the delivery of said instrument, J. W. Richards gave his note for $2,400 to the bank, and the bank credited same on A. J. Lummus' indebtedness to the bank, and afterwards J. W. Richards deeded said property to the bank, which surrendered to him his $2,400 note. As we view the case, it is not necessary to decide whether or not the bank or Richards was an innocent purchaser for value.
Under several assignments, plaintiffs in error contend, in effect, that, where it is shown that a married woman has not appeared before a notary for the purpose of acknowledging the execution of a deed purporting to convey her homestead, and no such acknowledgment has in fact been made, she having in no way invoked the exercise of such officer's authority as a notary, the certificate of the notary, however formal, is not binding upon her, even in favor of an innocent purchaser for value. It appears from the finding of the jury to the seventh special issue, set out above, that the notary did not attempt to take Mrs. Lummus' acknowledgment to the purported deed.
Mrs. Lummus testified, in substance: That her husband had tried to get her to sign a mortgage twice, and that she refused; that, after the second talk, on the assurance of her husband that Mr. Munsey would never foreclose, she agreed to sign the mortgage; that Mr. Collard came up to their house and *Page 198 
said, "Here are some papers Mr. Richards wants you to sign, and you sign your name under Jack's;" that she and her husband went into the house to a table and signed the paper; that, as she remembered, Mr. Collard had on his overshoes, which were muddy, and she did not think that he came into the door; that not a word was said to her about the instrument, and when she signed it she thought it was a mortgage, and, if she had not thought so, she would not have signed it.
A. J. Lummus testified, in substance, that Mr. Collard brought the instrument up to the house and said, "Here are some papers Mr. Richards sent up here for you all to sign;" that he and his wife walked into a 10x12 foot room and signed the same in the presence of each other, without so much as reading it; that not a word was said about it after he handed it to them; that, after signing the same, Collard took it back with him.
George W. Collard testified, in substance, that the paper was delivered to him by J. W. Richards, who told him to go up to Mr. Lummus' and have him and Mrs. Lummus to sign it; that he carried the paper to the house where they were together; that he did not read the paper over to Mr. Lummus or his wife; that he at the time did not know what the paper was; that he did not explain the paper to either Mr. Lummus or his wife; that both Mr. and Mrs. Lummus were in a room about 12x12 feet when they signed the paper, and Mr. Lummus remained in the room while his wife signed the paper. The witness further said:
"I did not make any explanation to either of them what the paper was, as Mr. Richards just handed the paper to me, stating that he had a paper and would like to get me to go up to Mr. Lummus' and have him and Mrs. Lummus to sign it. * * * Well, in the first place, I asked Mr. Richards did they understand the paper, and he said, `Yes,' they understood it, to go and have them sign it, and so I did not pay any attention to what the paper was — just thinking it was the bank, and Mr. Lummus being an officer (a deputy constable) and Mr. Richards having stated that they understood it — and that is the reason I did not read it over to or explain it to either of them. * * * I did not ask Mrs. Lummus did she willingly sign the instrument, nor did she state that she did. I did not ask her if she executed it for the purposes and consideration therein expressed, nor did she state that she did. I did not ask her if she acknowledged the instrument to be her act and deed, nor did she state that she did. I did not ask her whether she wished to retract it, nor did she state whether she did or not. In fact, I did not say anything to her about acknowledging that instrument, asked her no questions whatever in relation to it, nor did I examine her privily and apart from her husband concerning the instrument. After the instrument was signed by Mr. and Mrs. Lummus, I brought it back to the bank and delivered it to Mr. Richards — he being in the bank at the time."
The notary's certificate of the acknowledgment of Mrs. Lummus to said instrument, made by the witness George W. Collard as a notary public, is in due and statutory form. However, the evidence of said George W. Collard and Mr. and Mrs. Lummus, all of which is in line with the finding of the jury and is uncontradicted by any other evidence in the record, shows affirmatively that said notary did not take, nor attempt to take, Mrs. Lummus' acknowledgment to said instrument. There is no evidence that Mrs. Lummus appeared before said notary for the purpose of having him take her acknowledgment or that she in any way invoked his authority as such officer for such purpose, or that she even knew he was a notary. This being true, it necessarily follows the recitations of his certificate as to her acknowledgment are wholly false.
The rule seems to be well settled in this state that, where a married woman, who has with her husband signed a deed conveying the homestead or her separate property, appears before an officer authorized to take acknowledgments for the purpose of acknowledging such conveyance, and the officer fails to do his duty in taking such acknowledgment, but makes a certificate which shows a full compliance with the law, such certificate is conclusive upon the married woman in favor of an innocent vendee who paid value for it without notice that the officer failed to perform his duty as required by law. Pool v. Chase, 46 Tex. 210; Kocoure v. Marak,54 Tex. 205, 38 Am.Rep. 623; Waltee v. Weaver, 57 Tex. 571. But where it is shown that the married woman has not appeared before the officer for the purpose of acknowledging the execution of the deed, and no acknowledgment has in fact been made, she having in no way invoked the exercise of the officer's authority in that respect, the certificate, however formal, is not binding upon her, even in favor of an innocent purchaser and for value. Breitling v. Chester, 88 Tex. 586, 32 S.W. 527; Wheelock v. Cavitt, 91 Tex. 679, 45 S.W. 796, 66 Am.St.Rep. 920; Yaseen et al. v. Green (Tex.Civ.App.) 140 S.W. 824 (writ denied); Cosgrove v. Nelson (Tex.Civ.App.) 269 S.W. 891 (affirmed by Supreme Court, 277 S.W. 1118); Putman v. Coleman et al. (Tex.Civ.App.) 277 S.W. 213; People's Gas Co. v. Fletcher, 81 Kan. 76, 105 P. 34, 41 L.R.A. (N. S.) 1161, and cases cited. The evidence is conclusive that Mrs. Lummus did not go before the notary for the purpose of acknowledging said instrument, and that the notary did not appear before her for the purpose of taking her acknowledgment, but only, as testified by him, to secure her signature to said instrument. The evidence is also conclusive that the exercise of his authority as a notary was in no way invoked by Mrs. Lummus in respect to taking her acknowledgment, and that he did not in fact attempt to take her acknowledgment, as found by the *Page 199 
jury and admitted by the notary. Said deed was wholly void as to Mrs. Lummus, and ineffectual as a conveyance even if Richards and the bank were innocent purchasers for value, and said deed being void and conveying no title as to the wife, and the property being the homestead, it conveyed no title as to either the husband or wife. Stallings v. Hullum, 89 Tex. 431, 35 S.W. 2; Martin v. Astin (Tex.Com.App.) 295 S.W. 584. We sustain the above assignments. We think the trial court should have instructed a verdict for plaintiffs in error.
It not appearing conclusively that the matter here discussed was by the pleading and evidence fully developed, we will remand the case.
Reversed and remanded.