No. 27,865.

MANUEL FELAINE et al., *Appellants*, v. JOHN WELCH et al.,
*Appellees.*

(268 Pac. 821.)

Opin-
ion filed July 7, 1928.

*T. H. Stanford, John Bertenshaw* and *Kirke C. Veeder*, all of Independence,
for the appellants.

*Thomas E. Wagstaff* and *Jay W. Scovel*, both of Independence, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to set aside a deed of real estate
on the ground of fraud. The court sustained a demurrer to plaintiffs' evidence on two grounds—first, no fraud was proved; and
second, the action was barred by the two-year statute of limitations.
Plaintiffs appeal.

The deed was executed by Mary J. Welch on June 10, 1918. Mary

J. Welch was at the time old and infirm and bedridden. She could not read or write, and she signed by mark. The grantee was Lizzie Welch, wife of the grantor's son, John Welch. The deed was recorded on April 10, 1919. Mary J. Welch died on August 7, 1919. John Welch and Lizzie Welch moved into the property about the time the deed was recorded and have ever since occupied it. They paid no rent, paid taxes, and none of the heirs of Mary J. Welch made any claims to any interest in the property for about seven years. The petition was filed on May 13, 1926, by heirs of Mary J. Welch, other than John Welch. The names of several plaintiffs were used without authority. They refused to be counted among the plaintiffs and were made defendants. Three of the remaining plaintiffs appeared at the trial, Manuel Felaine and Fern Johnson, grandchildren, and China Welch, daughter of the grantor. The answer was filed on July 30, 1926, and the trial occurred on May 27, 1927.

The petition did not plead any false representation, or any unkept promise, or any described kind of fraudulent inducement, deception, or overreaching. There was no evidence that any fraud of that kind was perpetrated. There was evidence that on one occasion John Welch said to his mother $100 was owed on the place and for her to sign a deed to Lizzie for that $100. There was no evidence that the statement of fact was untrue. While there was evidence that Mrs. Welch told John she would not sign a deed, there was no evidence of any harshness on the part of John Welch toward his mother, or of exercise of any undue influence to secure execution of the deed.

The petition charged the deed was signed by mark, the signature by mark was witnessed, and the notary's certificate of acknowledgment was attached to the deed at the instance of John Welch and Lizzie Welch, after the death of Mary J. Welch, with intent to cheat and defraud her heirs other than John Welch. That could not be true, because the deed was filed for record on April 10, 1919, and Mary J. Welch did not die until August 7 of that year. The evidence for plaintiffs disclosed that Mary J. Welch knew before she died that the deed to Lizzie Welch was on record. Fern Johnson, one of the plaintiffs, went to the courthouse with her husband and discovered the deed to Lizzie Welch. She then talked with her grandmother about it, and told her grandmother the deed was in Lizzie's name. Fern Johnson and her aunt, China Welch, then went to see a lawyer

about setting the deed aside. China Welch testified her mother told her she had turned the deed over to Lizzie. China Welch then said she heard it outside and asked her mother about it, and her mother said she had not made her mark or deeded the property. The lawyer was then consulted. The result is, if any cause of action ever existed to set aside the deed on the ground of fraud, it accrued to Mary J. Welch in her lifetime. Her death did not interrupt the running of the statute of limitations, and the action was not commenced until May 13, 1926, five years after the two-year period in which action might have been commenced, had elapsed.

Plaintiffs say they produced some evidence that the deed was a forgery. Some evidence that the deed was a forgery was not enough to take the case to the jury. As indicated, the signature to the deed was by mark. Below the signature, appeared the following:

"Signed, sealed and delivered in the presence of: Witness to mark: .A. M. Cole."   .

Below the signature of the witness, appeared the following certificate of acknowledgment:

"State of Kansas, County of Montgomery, ss:

"Be it remembered, that on this 10th day of June, A. D. 1918, before me, the undersigned, a notary public, in and for the county and state aforesaid, came Mary J. Welch (widow over 21 years of age), who is personally known to me to be the same person who executed the within instrument of writing and such person duly acknowledged the execution of the same.

"In testimony whereof, I have hereunto set my hand and affixed my official seal the day and year last above written.

(Seal)                                    FLOYD FOSTER, *Notary Public.*

"Term expires March 20, 1919."

The public interest in the security of land titles will not permit this authentication of due execution to be overthrown by a bare preponderance of evidence.

"A higher and more satisfactory character of proof is required to establish that an instrument or conveyance is not what it purports to be than is necessary in ordinary civil cases. Generally, a mere preponderance is sufficient; but when parties deliberately execute a written conveyance there is a strong presumption that it expresses their intentions, and more than a bare preponderance of parol proof is required to remove this presumption and to show a contrary intention. Some of the courts declare that in such cases the proof must be 'clear'; others that it must be 'convincing'; others that it must be 'satisfactory'; and still others that it must be 'clear of all reasonable doubt.' These expressions substantially convey the same idea and require the same degree of proof. To establish a fact by the clear preponderance of the evi-

dence, the proof must be clear of reasonable doubt." (*Winston v. Burnell*, 44 Kan. 367, 369, 24 Pac. 477.)

This rule applies to impeachment of formally correct certificates of acknowledgment of execution of recorded deeds. (1 C. J. 896; *Gabbey v. Forgeus*, 38 Kan. 62, 15 Pac. 866; *Gas Co. v. Fletcher*, 81 Kan. 76, 105 Pac. 34; *Fish v. Poorman*, 85 Kan. 237, 244, 116 Pac. 898.) Any other rule would open the way to fraud and perjury and would work incalculable mischief. The question presented to the district court by the demurrer to the evidence was not whether there was some evidence to go to the jury, but whether there was any evidence which, rationally considered, would fairly measure up to the proper standard; and the court was authorized to withdraw the case from the jury if the evidence were of such doubtful, uncertain, contradictory, and unsatisfactory character that a finding of forgery by the jury would necessarily be set aside.

The witness to the signature was called by plaintiffs to testify at the trial. He was handed a photostatic copy of the deed and said it bore an exact copy of his signature. He had no recollection of witnessing the grantor's signature, but would not say he did not do so. He and Floyd Foster would go out and take acknowledgments of both white and colored persons, and he recognized the signature of Floyd Foster to the certificate of acknowledgment, but he had no recollection of Mary J. Welch. Inability to remember the transaction nine years after it occurred was no evidence that it did not occur. Identification of his own signature and the signature of the notary, considered in connection with the presumption of discharge of the notary's official duty, established execution of the deed to a very high degree of certainty.

The testimony offered to overcome the certificate of acknowledgment was not merely contradictory and unpersuasive, but was not free from suspicion. China Welch testified she was living with her mother in 1918, and the date, June 10, 1918, was clearly fixed in her mind. John and Lizzie Welch were frequently at Mary J. Welch's home, and were there on June 10, 1918, in the evening, a little before night. On that very day she heard John ask his · mother to sign the deed. She refused to do so, and John went off mad and cursing. China Welch further testified she was living at her mother's home about five months before her mother died, and was there only five months. If so, she went there in April, 1919,

ten months after the incident referred to supposedly occurred. She then testified she thought she went to live with her mother in the fall of 1918, but she was not sure. The deed was executed in June, 1918. China Welch testified she first learned the deed had been executed about "a year ago." That would be in 1926, but Fern Johnson testified she went with China Welch to see the lawyer about setting the deed aside in 1919. As indicated, at one point in the course of her examination, China Welch testified her mother said she had turned the deed over to Lizzie. She admitted consulting a lawyer about it.

The evidence fairly discloses that when delivery of the deed became known and the lawyer was consulted, all before death of Mary J. Welch, nobody thought of forgery, and the remedy adopted was action to have Mary J. Welch adjudged insane or feeble-minded, as a basis for setting aside the deed.

The remainder of the testimony for plaintiffs bearing closely on the subject of forgery was that no white man was at the home of Mary J. Welch on June 10, 1918. The notary who took the acknowledgment and the witness to the signature were engaged in the real-estate business under the name of Foster Land Company, and both were white men. Fern Johnson was born in her grandmother's home, lived there until John Welch and Lizzie Welch moved in, in 1919, and waited on her grandmother during her last illness. Testifying nine years afterward, Fern Johnson remembered the 10th day of June, 1918, perfectly. It was the day a neighbor came across the street to receive a telephone message. The neighbor came about three o'clock in the afternoon and stayed all that afternoon and evening. No white man came there on June 10, 1918, and John Welch and Lizzie Welch were not there on that date. They might have come late in the evening, but Fern was the main one taking care of her grandmother, and she did not see them. The neighbor remembered June 10, 1918, perfectly. By felicitous coincidence, it was the tenth day after her husband received an injury. He was in a hospital and had grown worse. She looked at the clock at two o'clock in the afternoon, and at half past three went over to Mrs. Welch's, stayed the rest of the afternoon, and remained until nine o'clock at night. No white man came, and John Welch and Lizzie Welch were not there. She named those who were present, and China Welch was not there.

The result of the foregoing is plaintiffs undertook to impeach the notary's certificate by fabricated testimony. Without pursuing the subject further, the testimony as a whole did not approach the applicable standard of proof; and because there was no evidence capable of producing conviction to a moral certainty, the demurrer to the evidence was properly sustained.

The judgment of the district court is affirmed.