## HITZ *v.* JENKS.

## SAME *v.* SAME.

### APPEALS FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 21, 1887. — Decided November 14, 1887.

Real estate in the District of Columbia, belonging to a married woman before the act of April 10, 1869, c. 23, may be conveyed, by deed voluntarily executed and duly acknowledged by her husband and herself, to secure the payment of a debt of his.

Under §§ 450–452 of the Revised Statutes of the District of Columbia, a certificate of the separate examination and acknowledgment of a married woman, made in the prescribed form, and recorded with the deed executed by her, cannot be controlled or avoided, except for fraud, by extrinsic evidence of the manner in which the magistrate performed his duty.

A receiver of a national bank, appointed by the comptroller of the currency, is not accountable in equity to the owner of real estate for rents

thereof received by him as such receiver, and paid by him into the treasury of the United States, subject to the disposition of the comptroller of the currency, under § 5234 of the Revised Statutes.

Accruing rents, collected and paid into court by a receiver appointed on a bill in equity against the mortgagor and a second mortgagee to enforce a first mortgage, which appears to have been satisfied and discharged, belong to the second mortgagee, so far as the land is insufficient to pay his debt.

IN equity. The case is stated in the opinion of the court.

*Mr. Enoch Totten* for appellant.

*Mr. Walter D. Davidge* and *Mr. R. D. Mussey* for appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

The original suit was a bill in equity, filed January 10, 1879, by Keyser, as the receiver of the German American National Bank, against Hitz and wife, Donaldson, Prentiss, Chipley, Halstead, Crane, Tyler and Jenks, to enforce a deed, in the nature of a mortgage, dated January 26, 1876, by which Hitz and wife conveyed land in Washington to Donaldson and Prentiss, in trust to secure the payment of promissory notes for $20,000, made by Chipley, indorsed by Halstead and held by the bank; as well as to set aside, as made in fraud of the bank, the following conveyances of the same land: 1st. A release, dated June 16, 1877, from Donaldson and Prentiss to Mrs. Hitz. 2d. A deed, of the same date, from Hitz and wife to Crane. 3d. A deed, dated June 18, 1877, from Crane to Tyler, in trust to secure the payment of Crane's promissory notes for $20,000, payable to Hitz and by him indorsed to Jenks.

Mrs. Hitz filed a cross-bill against Keyser and her codefendants, alleging that she was induced to execute the conveyance to Crane by fraud and in ignorance of its contents; and praying for a cancellation both of that conveyance and of the deed of trust from Crane to Tyler, and for an account of rents and

profits. By leave of court, she afterwards amended her bill so as to allege that the deed to Crane was fraudulently altered after she executed it.

After a hearing upon pleadings and proofs, it was adjudged at the special term, by a decree made November 28, 1881, and amended December 15, 1881, that these two deeds were valid against Hitz, but void as against his wife; that the former deed of trust had been discharged by payment and release; and that Keyser account for the rents and profits previously received by him, and collect and pay into court all rents subsequently accruing. From that decree Mrs. Hitz, Jenks and Keyser each appealed to the general term, which on December 11, 1883, reversed the decree of the special term, and dismissed both bills, save that the cause was retained to take an account of the rents and profits received or which should have been received by Keyser, and to determine the right to those rents and profits, which were claimed by Mrs. Hitz as her separate property, by Jenks as part of the security afforded by the deed of trust to Tyler, and by Keyser under judgments recovered against Hitz. 2 Mackey, 513. On July 13, 1885, a further decree was entered in general term, denying the right of Mrs. Hitz to any part of those rents and profits. 4 Mackey, 179. From each decree of the general term she alone appealed to this court.

The principal matter to be determined is the validity, as against Mrs. Hitz, of the conveyance from her husband and herself to Crane, and of the deed of trust from Crane to Tyler. The evidence establishes the following facts:

Mr. and Mrs. Hitz were married in 1856, children were born to them, and she inherited the land in question from her father, before the passage of the act of Congress, providing that "in the District of Columbia the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were feme sole, and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise and bequeath

the same, or any interest therein, in the same manner and with like effect as if she were unmarried." Act of April 10, 1869, c. 23, § 1, 16 Stat. 45 ; Rev. Stat. D. C. §§ 727, 728.

Chipley and Halstead were men of no means, and the real object of the deed of trust from Hitz and wife to Donaldson and Prentiss was to secure certain liabilities of Hitz to the bank, of which he was then president. The object of making the deeds from Hitz and wife to Crane and from Crane to Tyler was to secure the payment of money actually advanced by Jenks to Hitz, and by Hitz applied to the payment of the notes secured by the former deed of trust.

The evidence satisfactorily proves that no fraud was practised upon Mrs. Hitz, and that the deed from herself and her husband to Crane was put in its present form before it was signed by either of them. As these are pure matters of fact, and the evidence relating to them is well summed up in the opinion of the court below, they need not be enlarged upon. 2 Mackey, 521–526.

There can be no doubt that by a deed, voluntarily executed and duly acknowledged by the husband and the wife, the entire title of both might be conveyed to secure the payment of his debt, notwithstanding that the act of 1869, as construed by this court, exempted the land, or any interest therein, from being taken on execution against him. *Hitz* v. *National Metropolitan Bank*, 111 U. S. 722 ; *Mattoon* v. *McGrew*, 112 U. S. 713.

The more important question is, whether the appellant has shown by competent and sufficient proof that her acknowledgment of the deed to Crane did not fulfil the requirements of the Revised Statutes of the District of Columbia upon the subject, which are as follows:

By § 441, acknowledgments of deeds may be made before any judge of a court of record and of law, or any chancellor of a State, or a judge of a court of the United States, or a justice of the peace, or a notary public, or a commissioner of the circuit court of the district.

By § 450, " when any married woman shall be a party executing a deed for the conveyance of real estate or interest

therein, and shall only be relinquishing her right of dower, or when she shall be a party with her husband to any deed, it shall be the duty of the officer authorized to take acknowledgments, before whom she may appear, to examine her privily and apart from her husband, and to explain to her the deed fully."

By § 451, "if, upon such privy examination and explanation, she shall acknowledge the deed to be her act and deed, and shall declare that she had willingly signed, sealed and delivered the same, and that she wished not to retract it, the officer shall certify such examination, acknowledgment and declaration by a certificate annexed to the deed, and under his hand and seal, to the following effect," that is to say, beginning in the usual form of a certificate of acknowledgment, and adding that " being by me examined privily and apart from her husband, and having the deed aforesaid fully explained to her, she acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed and delivered the same, and that she wished not to retract it."

By § 452, " when the privy examination, acknowledgment and declaration of a married woman is taken and certified and delivered to the recorder of deeds for record, in accordance with the provisions of this chapter, the deed shall be as effectual in law as if she had been an unmarried woman," except as to any covenants therein.

These provisions substantially reënact statutes which have been in force ever since 1715 in the District of Columbia, and in the State of Maryland out of which the District was formed. Maryland Stats. 1715, c. 47, § 11 ; 1752, c. 8 ; 1766, c. 14, § 6 ; 1797, c. 103, § 3 — all in Kilty's Laws ; Dist. Col. Laws 1868, pp. 21, 28, 38; acts of May 31, 1832, c. 112, 4 Stat. 520 ; April 20, 1838, c. 57, § 4, 5 Stat. 227.

The conveyance of the estates of married women by deed, with separate examination and acknowledgment, has taken the place of the alienation of such estates by fine in a court of record under the law of England, though differing in some of its effects, owing to the diversity in the nature of the two modes of proceeding.

A fine was in the form of a judgment of a court of record, at first in an actual, and afterwards in a fictitious suit by the conusee against the conusors to recover possession of the land; and derived its very name from its putting *an end* to that suit and to all other controversies concerning the same matter.   2 Bl. Com. 349; Co. Lit. 262 *a*.   A party could not therefore impeach it at law, even for infancy (except by writ of error sued out while still under age) or for insanity.   Bac. Ab. Fines and Recoveries, Fines C; 5 Cruise Dig. tit. 35, c. 5, §§ 41–54; *Murley* v. *Sherren*, 1 Per. & Dav. 126; *S. C.* 8 Ad. & El. 754.   Yet if any fraud or undue practice was used in obtaining the fine, the Court of Chancery would relieve against it, as against any other conveyance.   5 Cruise Dig. tit. 35, c. 14, §§ 68–77 ; *Bulkley* v. *Wilford*, 2 Cl. & Fin. 102 : *Conry* v. *Caulfield*, 2 Ball & Beatty, 255.

On the other hand, the alienation of land by deed of husband and wife with her separate examination and acknowledgment is, in form as well as in fact, a conveyance by the parties, and therefore does not, even if the acknowledgment is certified by a magistrate in the form prescribed by statute, and recorded, bind a wife who, by reason of infancy or insanity, is incapable of conveying.   *Sims* v. *Everhardt*, 102 U. S. 300; *Williams* v. *Baker*, 71 Penn. St. 476; *Priest* v. *Cummings*, 16 Wend. 617, 631, and 20 Wend. 338, 349; *Jackson* v. *Schoonmaker*, 4 Johns. 161.   In any case of fraud or duress, also, it may be impeached by bill in equity, or, in some States, in an action at law.   *Central Bank* v. *Copeland*, 18 Maryland, 305; *Schrader* v. *Decker*, 9 Penn. St. 14; *Louden* v. *Blythe*, 16 Penn. St. 532, and 27 Penn. St. 22; *Hall* v. *Patterson*, 51 Penn. St. 289; *Jackson* v. *Hayner*, 12 Johns. 469; *Fisher* v. *Meister*, 24 Michigan, 447; *Wiley* v. *Prince*, 21 Texas, 637.

The statute of 18 Edw. I. *De Modo Levandi Fines* enacted that if a feme covert should be one of the parties to a fine, then she must first be examined by certain justices, and if she did not assent to the fine it should not be levied.   Yet this was always understood to mean that the fine ought not to be received without her examination and free consent; but that if it was received and recorded, neither she nor her heirs could

be permitted to aver that she was not examined and did not consent; "for this," says Lord Coke, "should be against the record of the court, and tending to the weakening of the general assurances of the realm." 2 Inst. 510, 515; Bac. Ab. *ubi supra.*

The object of a statute, like that now before us, requiring the separate examination of the wife to be taken by a judicial officer or notary public, to be certified by him in a particular form, and to be recorded in the registry of deeds, is twofold: not only to protect the wife by making it the duty of such an officer to ascertain and to certify that she has not executed the deed by compulsion of her husband or in ignorance of its contents; but also to facilitate the conveyance of the estates of married women, and to secure and perpetuate evidence, upon which innocent grantees as well as subsequent purchasers may rely, that the requirements of the statute, necessary to give validity to the deed, have been complied with. *Lawrence* v. *Heister,* 3 Har. & Johns. 371, 377.

The duty of examining the wife privily and apart from her husband, of explaining the deed to her fully, and of ascertaining that she executed it of her own free will, without coercion or under influence of his, is a duty imposed by law upon the officer, involving the exercise of judgment and discretion, and thus a judicial or quasi-judicial act. The magistrate is required to ascertain a particular state of facts, and, having ascertained it, to certify it for record, for the benefit of the parties to the deed, and of all others who may thereafter acquire rights under it. And the statute expressly provides that upon the recording of the certificate "the deed shall be as effectual in law as if she had been an unmarried woman."

The reasonable, if not the necessary conclusion is, that, except in case of fraud, the certificate, made and recorded as the statute requires, is the sole and conclusive evidence of the separate examination and acknowledgment of the wife.

It has been decided by this court, in a case arising under a similar statute of Virginia, that if the certificate, as recorded, is silent as to these facts, the want cannot be supplied by parol evidence that the wife was duly examined; and this for the

reason stated by Mr. Justice Trimble, in delivering judgment, as follows: " What the law requires to be done, and appear of record, can only be done and made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether there be an acknowledgment or privy examination in fact or not, if there be no record made of the privy examination; for, by the express provisions of the law, it is not the fact of privy examination merely, but the recording of the fact, which makes the deed effectual to pass the estate of a feme covert." *Elliott* v. *Peirsol*, 1 Pet. 328, 340.

That the magistrate's certificate, when made in the form required by the statute, and duly recorded, is conclusive evidence that he has performed his duty, has not been directly adjudged by this court; but the course of its decisions has tended to this conclusion. In *Drury* v. *Foster*, Mr. Justice Nelson, in delivering judgment, observed: " There is authority for saying, that where a perfect deed has been signed and acknowledged before the proper officer, an inquiry into the examination of the feme covert, embracing the requisites of the statute, as constituting the acknowledgment, with a view to contradict the writing, is inadmissible; that the acts of the officer for this purpose are judicial and conclusive." 2 Wall. 24, 34. And in *Young* v. *Duvall*, the court said that if the officer's certificate " can be contradicted, to the injury of those who in good faith have acted upon it, the proof to that end must be such as will clearly and fully show the certificate to be false or fraudulent. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity of titles to real estate, which would inevitably follow from one less rigorous." 109 U. S. 573, 577.

It would be inconsistent with the reasons above stated, as well as with a great weight of authority, to hold that, in the case of a deed actually executed by a married woman of full age and sound mind, a certificate of her separate examination and acknowledgment, in the form prescribed by the statute, and duly recorded with the deed, can afterwards, except for

fraud, be controlled or avoided by extrinsic evidence of the manner in which the examination was conducted by the magistrate. *Comegys* v. *Clarke*, 44 Maryland, 108; *Jamison* v. *Jamison*, 3 Wharton, 457; *Williams* v. *Baker*, 71 Penn. St. 476; *Harkins* v. *Forsyth*, 11 Leigh, 294; *Greene* v. *Godfrey*, 44 Maine, 25; *Baldwin* v. *Snowden*, 11 Ohio St. 203; *Graham* v. *Anderson*, 42 Illinois, 514; *Dolph* v. *Barney*, 5 Oregon, 191; *Johnston* v. *Wallace*, 53 Mississippi, 331; *Hartley* v. *Frosh*, 6 Texas, 208. See also *Bancks* v. *Ollerton*, 10 Exch. 168, 182.

As to such of the cases, cited by the learned counsel for the appellant, as have not been already referred to, it may be remarked that in *Rhea* v. *Rhenner*, 1 Pet. 105, in *Hepburn* v. *Dubois*, 12 Pet. 345, in *Dewey* v. *Campau*, 4 Michigan, 565, and in *O'Ferrall* v. *Simplot*, 4 Iowa, 381, the requisite certificate was either wanting or defective upon its face; and that *Dodge* v. *Hollinshead*, 6 Minnesota, 25, and *Landers* v. *Bolton*, 26 California, 393, were decided under statutes which expressly provided that the certificate should not be conclusive, but might be rebutted by other evidence.

In the case at bar, the recorded certificate of the notary public who took the acknowledgment is in the form given in the statute. The other evidence on the subject is the testimony of the appellant and of the notary. The appellant, being called as a witness in her own behalf, admitted her signature, but did not recollect that she ever executed or acknowledged the deed in question, and denied that it was ever explained to her. The notary, being called as a witness by the appellees, testified that in taking her acknowledgment he asked her if she had read over the deed and understood its contents, and if she willingly signed, sealed and delivered it, without any compulsion on the part of her husband, and wished not to retract it, to all which she answered in the affirmative; that he did not otherwise explain the deed to her, and did not read it himself; and that he did not think it necessary to explain a deed if the party was already acquainted with its contents.

The appellant's signature being admitted, and there being no proof of fraud or duress in taking or procuring her acknowledgment, the extrinsic evidence was, for the reasons and upon

the authorities before stated, incompetent to impeach the notary's certificate as to the manner in which he had performed his duty.

The result is that the appellant shows no ground for reversing the principal decree, and it only remains to consider her claim to rents and profits. This claim consists of two parts:

First. For rents received, with the consent of Hitz, by Keyser as receiver, appointed by the comptroller of the currency, of the national bank, from the time of his appointment as such receiver in October, 1878, to the date of the decree of the court below in special term, December 15, 1881. But it appears that the moneys so received were paid by him into the treasury of the United States, subject to the order of his superior officer, the comptroller of the currency, as required by § 5234 of the Revised Statutes, and were distributed by the comptroller among the creditors of the bank. They were therefore rightly treated by the court below as not to be accounted for in this cause.

Second. For rents received by Keyser under his appointment as receiver by the decree of the court in special term on December 15, 1881, and paid by him into the registry of the court, pursuant to that decree, from its date until its reversal in general term on December 11, 1883. It is argued for the appellant that by the rule affirmed in *Teal* v. *Walker*, 111 U. S. 242, a mortgagee is not entitled to rents and profits until he has been lawfully put in possession of the land; and that Keyser, having been admitted into possession by Hitz only, cannot hold the rents and profits against Mrs. Hitz. The conclusive answer to this argument is that the accruing rents were not received and held by Keyser by virtue of an agreement with Hitz; but the court, through Keyser as its receiver, took possession of these rents in order to preserve them for the party who should ultimately prevail in the suit. When it was afterwards adjudged that the first deed of trust, and the debt thereby secured, which Keyser's original bill sought to enforce, had been released and discharged, and that the second deed of trust was valid as against Mrs. Hitz; and the sum obtained for the land at a sale under the power contained in

this deed proved insufficient, by more than the whole of the fund in court, to pay the debt of Hitz to Jenks, secured by this deed; it was rightly held that Mrs. Hitz had no right as against Jenks to any part of this fund. This view disposes of the case, independently of the application of part of the fund to the payment of taxes accrued during the pendency of this suit; and even if the rents originally belonged to Mrs. Hitz, and not to her husband as tenant by the curtesy, which is by no means clear. *Hitz* v. *National Metropolitan Bank*, 111 U. S. 722.

*Decrees affirmed.*