THOMAS HOULIHAN *et al.* Appellees, *vs.* KATE MORRISSEY *et al.*—(JOSEPHINE M. HOULIHAN, Appellant.)

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. EQUITY—*master should not report his conclusions unless authorized by the order of reference.* A master in chancery derives his authority from the order referring the case to him, and if the order merely requires him to take and report the evidence he is not authorized to report his conclusions, though the fact that he does so will not justify a reversal if the decree is correct under the pleadings and the proof.

2. SAME—*the proofs must correspond with the allegations.* A complainant must recover, if at all, on the case made by his bill, and he cannot be permitted to make one case by the bill and another by the proofs, even though the evidence may show a meritorious case.

3. DEEDS—*certificate of acknowledgment cannot be overcome by unsupported testimony of grantors.* The certificate of acknowledgment to a deed is *prima facie* evidence of its execution, and while, as between the parties, it may be impeached for fraud, collusion or imposition, yet clear and satisfactory proof is necessary, and this requires more than the unsupported testimony of the grantors that the instrument was not known by them to be a deed.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

THOMAS J. O'HARE, for appellant.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal by Josephine M. Houlihan from a decree of the circuit court of Cook county on a bill for the partition of real estate and for other relief. The real estate belonged to Bridget Houlihan in her lifetime, and consisted of two lots in the city of Chicago, upon which there was a two-story brick house and a frame barn. She died in November, 1911, leaving as her children and only heirs-at-law, James Houlihan, Thomas Houlihan, Simon Houlihan, Josephine Houlihan, Mary Houlihan, Kate Morrissey, Agnes Driscoll and Margaret Jacoby. She left no surviving husband. The original bill was filed in July, 1912, for partition of the real estate by the sons Thomas and James Houlihan and the daughter Agnes Driscoll. It alleged each of the children of Bridget Houlihan was seized of the undivided one-eighth of the real estate and asked for partition. Simon Houlihan, Mary Houlihan, Kate Morrissey and Margaret Jacoby conveyed their interest in the premises to Josephine Houlihan, and they filed an answer disclaiming any interest in the premises. Josephine filed a separate answer, denying complainants Thomas Houlihan and Agnes Driscoll owned any interest in the land and alleging that she and James Houlihan were sole owners of it as tenants in common, the respondent owning the undivided seven-eighths and James Houlihan the undivided one-eighth. Afterwards, by leave of court, complainants in the original bill filed an amended bill. By the amended bill they alleged that since the filing of the original bill their solicitors found in the recorder's office the record of a quit-claim deed purporting to be signed by complainants Thomas Houlihan and Agnes Driscoll, conveying all their interest in the real estate to Josephine Houlihan in consideration

of one dollar and other good and valuable considerations. The purported deed bore date December 12, 1911, and was recorded on the 18th of the same month. It appeared to have been duly acknowledged by the grantors December 12, 1911, before Anthony J. Schmidt, a notary public, in Cook county. The amended bill further alleges said complainants Thomas Houlihan and Agnes Driscoll had no knowledge of the existence of the purported deed until its discovery by their solicitors; that neither of them knowingly executed it, and no consideration was given them, or either of them, therefor; that about December 10, 1911, defendant Josephine Houlihan and said Anthony J. Schmidt, notary public, came to said complainants and told each of them that Josephine Houlihan desired to be appointed administratrix of Bridget Houlihan's estate, and in order for that to be done it would be necessary for the said Thomas Houlihan and Agnes Driscoll to sign a paper giving their consent to said appointment, and thereupon, believing said paper was as represented, they signed it; that because of the trust and confidence they reposed in their sister they did not read it and it was not read to them. The amended bill further alleges the complainants Thomas Houlihan and Agnes Driscoll now believe the paper signed by them was the quit-claim deed now of record in the recorder's office; that they were not informed the paper signed by them was a quit-claim deed, never acknowledged it as their deed before said Anthony J. Schmidt, and that it was obtained by fraud, deceit and misrepresentation. As amended, the bill claimed the three complainants each owned an undivided one-eighth of the premises; that Josephine Houlihan had received conveyances from four of the heirs for their interests and that she now owned the undivided five-eighths. The prayer of the amended bill was that the purported quit-claim deed from Thomas Houlihan and Agnes Driscoll to Josephine Houlihan be set aside and that the premises be partitioned in accordance with the interests of the

parties as set out in the amended bill. Josephine Houlihan
answered the amended bill, denying the deed was obtained
in the manner alleged and averring it was knowingly and
understandingly executed and delivered by the grantors.
The cause was referred to the master in chancery, with
directions "to take proofs therein and report to the court."
The master heard the proof and reported the same to the
court, together with his conclusions of the law and the
facts. He reported, finding from the evidence that Thomas
Houlihan and Agnes Driscoll signed and acknowledged the
quit-claim deed to Josephine Houlihan but further found
there was no consideration for its execution; that it was
executed by the grantors under the belief that it was nec-
essary to do so in order that Josephine Houlihan might
properly administer the estate of their deceased mother,
and notwithstanding said deed the grantors therein were
entitled to their share of the real estate upon partition, each
the undivided one-eighth thereof.

The order of reference to the master was drawn by the
solicitor for complainants, and it was not discovered by
defendant's solicitor that it contained no directions to the
master to report his conclusions until after exceptions to
the report had been filed and argued before the chancellor.
Before the final decree was entered defendant's solicitor
moved to suppress the findings of the master, but the
motion was overruled and a decree entered finding that
Thomas Houlihan and Agnes Driscoll signed and acknowl-
edged the quit-claim deed to Josephine Houlihan December
12, 1911, but that it was executed by them under the be-
lief it was necessary to do so in order that Josephine Hou-
lihan might properly administer the estate of their mother,
and notwithstanding said deed, because of the fiduciary re-
lations existing between the grantors and the grantee, the
grantors are each seized of and entitled to a one-eighth
share in all of said real estate. Partition is decreed in ac-

cordance with the interests of the parties as set out in the amended bill.

The master exceeded his authority in reporting his conclusions. A master derives his authority from the order referring the case to him. (17 Ency. of Pl. & Pr. 1019-1038; 16 Cyc. 439, 440.) Under the order of reference in this case the master was only authorized to take and report the evidence to the court. The fact that he exceeded his authority, however, would not justify the reversal of the decree if it were clearly right under the bill and the proof. We are of opinion this decree must be reversed, if for no other reason, because the decree finds a different state of facts upon which relief is granted from the facts alleged in the bill. This clearly appears from an examination of the bill and decree which we have above set out in substance and need not here repeat. The allegations of the bill and the proofs must correspond. A complainant, to recover at all, must do so on the case made by the bill, and will not be permitted to state one case in the bill and make a different one by the proof. Even though the evidence may make a meritorious case, if it is variant from the case made by the bill the bill should be dismissed. (*Rowan* v. *Bowles,* 21 Ill. 17; *Stearns* v. *Glos,* 235 id. 290.) A complainant must stand or fall by the case he makes in his bill. (*Gage* v. *Curtis,* 122 Ill. 520.) Furthermore, we do not think the evidence was sufficient, under the allegations of the bill, in any event, to justify setting the deed aside.

On behalf of complainants Agnes Driscoll testified she called on her sister Josephine in the first part of December, 1911; that Josephine told her she had some good news,—that she had been down town and was going to be appointed administratrix of the property; that Josephine requested the witness to stay at home that evening and for her husband to be home also, and said she (Josephine) was going over to the witness' house that evening and would

be there about nine o'clock; that Josephine, together with one Schmidt, came to her house about that time; that Schmidt took papers out of his pocket and told her (Mrs. Driscoll) where to sign, and she signed her name at the place indicated; that she did not read the paper nor did anyone read it to her. She further testified she did not know why her sister wanted her husband's name to the paper and never thought to ask her; that her husband was not at home at the time the deed was signed and afterwards declined to sign it; that her husband told her the next night it was a deed she had signed.

Thomas Houlihan testified his sister Josephine telephoned him December 12, 1911, she would come to his house about seven o'clock that evening and could sell the property; that she would like to be administratrix; that he replied to her she could be administratrix; that about half-past seven or eight o'clock that evening she and a notary public came to his house; that she asked where his wife was and was told she had gone out; that the notary public had a paper, and said, "Sign your name there." The witness testified he did not read the paper and nobody read it to him; that afterwards his wife, who refused to sign the deed, told him the paper was a deed.

On behalf of defendant, Anthony J. Schmidt testified he was a lawyer by profession and was a notary public; that he went with Josephine Houlihan to the house of her brother Thomas and told Thomas he was a notary public; that he had a paper to sign that they were speaking about, and asked where his wife was; that Thomas said his wife had gone to a dentist but would be back soon, and they waited fifteen minutes or so for her to return; that she did not return, and Josephine said they had better not wait longer as they had to go to several other places; that the witness produced the deed, handed it to Thomas, and asked him to sign his name the same as it was written at the top; that before Thomas signed it the witness asked him if he

understood he was transferring his interest in the property on Harding avenue to Miss Houlihan, and Thomas said. "Yes, that is what we want to do; that is all right;" that witness then laid the deed on the table and Thomas signed it, after which witness asked him if it was his free and voluntary act, and he said it was; that Josephine suggested that they not wait longer for Mrs. Houlihan to return and told witness he could return next day and get her signature; that witness then went with Josephine to the house of Mrs. Driscoll; that witness produced the deed and asked Mrs. Driscoll if she was going to sign the deed conveying the Harding avenue property to her sister Josephine; that Mrs. Driscoll said yes, and witness asked her where her husband was, and was told he would not be home until late at night; that Mrs. Driscoll gave witness the number of her husband's place of business and then signed the deed, and in answer to the inquiry whether it was her free and voluntary act said it was.

Josephine Houlihan testified she was appointed administratrix of her mother's estate December 12, 1911; that on December 6, 1911, in a talk between herself and her sisters, Mrs. Driscoll, Mrs. Jacoby and Mrs. Morrissey, and her brother Simon Houlihan, Mrs. Driscoll spoke of the property and said something ought to be done, and that she and her husband had talked about it and thought "we ought to fix it over in my name;" that Mrs. Morrissey and Mrs. Jacoby said they were willing to convey their share to the witness; that afterwards the witness met Mrs. Driscoll at Mrs. Morrissey's flat and told her she had been appointed administratrix; that she further told Mrs. Driscoll she was going to come over with Schmidt to Mrs. Driscoll's house and have her sign papers conveying the property to her, (Josephine,) and Mrs. Driscoll said she would; that she subsequently met Thomas Houlihan and told him what Mrs. Driscoll said, and he said that was the best thing to do; that on the evening of December 12, 1911, the witness and

Schmidt went to Thomas Houlihan's house; that witness introduced Schmidt, who told Thomas they had a paper conveying the property to the witness; that Schmidt started to read the paper and Thomas told him he need not do so; that Schmidt then told Thomas how to sign his name; that Thomas said his wife was at a dentist's and asked the parties to wait for her; that they waited a little while but she did not come, so they went to Mrs. Driscoll's; that there Schmidt began reading the deed, but Mrs. Driscoll told him there was no need of it; that Schmidt inquired where he could find Driscoll, and was told by Mrs. Driscoll where his place of business was.

Mrs. Morrissey testified that at her house, December 12, 1911, Josephine Houlihan told Mrs. Driscoll "she was appointed that morning," evidently meaning as administratrix; that she was coming over to Mrs. Driscoll's house, and asked what would be the best time to find her husband at home; that Mrs. Driscoll said between seven and eight-thirty o'clock.

This is the substance of the material testimony, except that Thomas Houlihan and Mrs. Driscoll were called in rebuttal and denied certain parts of the testimony of Schmidt and Josephine Houlihan, particularly what they testified to having been said about conveying their interest in the land to Josephine.

It has been repeatedly held that the certificate of acknowledgment to a deed is *prima facie* proof of its execution, and while, as between the parties, it may be impeached for fraud, collusion or imposition, to overcome it clear and satisfactory proof is required, and this requires more than the unsupported testimony of the grantor. (*Gritten* v. *Dickerson*, 202 Ill. 372; *Watson* v. *Watson*, 118 id. 56; *Sassenberg* v. *Huseman*, 182 id. 341; *Kasturska* v. *Bartkiewicz*, 241 id. 604; *Spencer* v. *Razor*, 251 id. 278.) The only testimony heard on behalf of those seeking to set aside the deed was that of the grantors themselves. As opposed

to that testimony was the presumption in favor of the execution of the deed and the testimony of Josephine Houlihan and the notary public, the latter a wholly disinterested party, who took the acknowledgment and testified to being present and to what was said about the deed before it was signed.  In addition to that, Josephine Houlihan had been appointed administratrix before she went to her brother's and sisters' houses at the time the deed was executed, and Mrs. Morrissey's testimony tends strongly to show that Mrs. Driscoll had been informed of such appointment. Neither Mrs. Driscoll nor Thomas Houlihan testified that either Josephine Houlihan or Schmidt said it was necessary for them to sign the paper produced, for the purpose of enabling Josephine to administer on the estate.  At most they only claimed to assume the signing of the paper was necessary for that purpose.  They admit they learned very soon afterwards that it was a deed they signed, but when they filed the original bill, in July, 1912, they made no reference to it, but alleged that each of the eight children of their deceased mother owned the undivided one-eighth of the property.  After four of them had answered the bill disclaiming any interest in it, and Josephine Houlihan had answered claiming to be the owner of seven-eighths of the property, complainants filed the amended bill in October, 1912, alleging that since the filing of the original bill their solicitors had discovered the record of the deed from Thomas Houlihan and Mrs. Driscoll to Josephine Houlihan.  In our opinion the evidence was not sufficient to impeach and set aside the deed upon the grounds alleged and relied upon in the bill.

The decree is reversed and the cause remanded.

*Reversed and remanded.*