[No. 2847.   Dec. 3, 1924]

GARCIA v. LEAL et al.

### SYLLABUS BY THE COURT

1. A deed executed by using the hand of a person to make his mark thereon at the place of signature, is void, where the grantor does not consciously assent to the signature so made, nor afterwards ratify the same, and a certificate of acknowledgment placed thereon under such circumstances does not operate to render such conveyance valid.

2.   The duties performed by an officer in taking an acknowledgment in this state are ministerial in character rather than judicial.

3.   A certificate of acknowledgment duly executed as required by law is prima facie evidence of the execution of the instrument acknowledged, and should be impeached only by clear and convincing evidence; but a certificate of acknowledgment is not conclusive and may be contested, and where the evidence for the plaintiff to the effect that a deed had not been consciously executed by the grantor, and that the notary's certificate of acknowledgment thereon was false, if believed by the trial court, is clear and convincing, a judgment setting aside such deed will not be disturbed, although evidence on behalf of the defendants may be in direct conflict therewith.

4. The finding of the trial court that no consideration passed from the defendant to the plaintiff, or his intestate, for the conveyance sought to be set aside in this action, is supported by substantial evidence.

5. Where defendants desire to avail themselves of an estoppel in a suit to set aside a deed as a cloud upon plaintiff's title, and the complaint fully sets out the origin of such title, describes the deed sought to be set aside, and charges the acts of fraud alleged to have been committed in securing its execution, such estoppel must be especially pleaded.

6. The fact that a person sits quietly by while the signature of an unconscious person is placed to a deed, will not operate to estop him from attacking such deed where the grantees therein parted with no consideration therefor at the time of its execution, nor subsequent thereto, and did nothing to place themselves in a less advantageous position than they had been at the time of its execution.

Appeal from District Court, Sandoval County; M. E. Hickey, Judge.

Suit by Isaac Garcia, individually and as administrator, against Primitivo Leal and another. From a decree for plaintiff, defendants appeal. Affirmed.

O. A. Larrazolo, of Albuquerque, for appellants.

It is alleged that the grantor was not conscious at the time he signed the deed and it is incumbent upon the plaintiff, appellee herein, to establish that fact to the satisfaction of the court. Dicken v. Johnson, 7 Ga. 484; Howe v. Howe, 99 Mass. 88; Brown v. Brown, 39 Mich. 792; Chancellor v. Donnell, 95 Ala. 342; Gibbons v. Dunn, 46 Mich. 146; Kimball v. Cuddy, 117 Ind. 213; Titcomb v. Vantyle, 84 Ill. 371; Buckey v. Buckey, 38 W. Va. 168; Anderson v. Cranmer, 11 W. Va. 562; Jarrett v. Jarrett, 11 W. Va. 584; Doe, Guest v. Beeson, 2 Houst. (Del.) 246; Greenslade v. Darc, 20 Beav. 284, 24 L. J. Ch. N. S. 490; 1 Jur. N. S. 294; Achey v. Stephens, 8 Ind. 411; Odom v. Riddick, 104 N. C. 515, 7 L. R. A. 118; Cropp v. Cropp, 88 W. Va. 753; Pike v. Pike, 104 Ala. 642; Gates v. Cornett, 72 Mich. 435; Young v. Lamont, 56 Minn. 216; Dorchester v. Dorchester, 18 N. Y. S. 402; Swayze v. Swayze, 37 N. J. Eq. 180; Chicago West Div. R. Co. v. Mills, 91 Ill. 39;

Myatt v. Walker, 44 Ill. 485; Lilly v. Waggoner, 27 Ill. 395; Wall v. Hill, 1 B. Mon. 290, 36 Am. Dec. 578.

Fraud must be proved. Herring v. Wickham, 29 Gratt. 628; White v. Perry, 14 W. Va. 66; Thames v. Rembert, 63 Ala. 561; Morton v. Weaver, 99 Pa. 47; Mead v. Conroe, 5 Cent. Rep. 219, 113 Pa. 220; Babbitt v. Dotten, 14 Fed. Rep. 19; Ferguson v. Little Rock Trust Co., 137 S. W. 555; Mears v. Waples, 3 Houst. (Del.) 581; Ruby v. Jamison, 143 Ky. 486, 136 S. W. 909; Western Horse & Cattle Ins. Co. v. Putnam, 20 Neb. 331, 30 N. W. 246; Buchanan v. Buchanan, 73 N. J. Eq. 544, 68 Atl. 780, reversed on other grounds in 75 N. J. Eq. 274, 22 L. R. A. (N. S.) 454, 71 Atl. 745; Schultz v. Hoagland, 85 N. Y. 467; Wright v. Grover, 27 Ill. 426; Long v. West, 31 Kan. 298, 1 Pac. 545; Bailey v. Litten, 52 Ala. 282; Redpath Bros. v. Lawrence, 48 Mo. App. 427; Braddock v. Louchheim, 87 Fed. 287; Denoyer v. First Nat. Acci. Co., 145 Wis. 450, 130 N. W. 475; Wallace v. Mattice, 118 Ind. 59, 20 N. E. 497; Stewart v. English, 6 Ind. 176; Campau v. Lafferty, 50 Mich. 114, 15 N. W. 40; Bumpus v. Bumpus, 59 Mich. 95, 26 N. W. 410; U. S. v. The Maxwell Land Grant Co., 121 U. S. 325, 30 L. Ed. 949. etc·

In the following cases the courts have said that fraud should not be found when the facts and circumstances proven may as well consist with honesty of purpose. Smith v. Branch Bank, 21 Ala. 125; Alabama Life Ins. & T. Co. v. Pettway, 24 Ala. 544; Stiles v. Lightfoot, 26 Ala. 443; Thames v. Rembert, 63 Ala. 561; Cromelin v. M'Cauley, 67 Ala. 542; Phoenix Ins. Co. v. Moog, 81 Ala. 335, 1 So. 108; Lyman v. Cessford, 15 Iowa 229; Schofield v. Blind, 33 Iowa 175; Drummond v. Couse, 39 Iowa 442; Raymond v. Morrison, 59 Iowa 371, 13 N. W. 332; Ley v. Metropolitan Life Ins. Co., 120 Iowa 203, 94 N. W. 568; Connors v. Chingren, 111 Iowa 437, 82 N. W. 934; Pierce v. Pierce, 55 Mich. 629, 22 N. W. 81, 15 Mor. Min. Rep. 675; Morris v. Talcott, 96 N. Y. 100; Baird v. New York, 96 N. Y. 567; Postal v.

Cohn, 83 App. Div. 27, 81 N. Y. S. 1089; Roberts v. Washington Nat. Bank, 11 Wash. 559, 40 Pac. 225; State Sav. Bank v. Emge (Iowa), 108 N. W. 530; Alter v. Bank of Stockham, 53 Neb. 223, 37 N. W. 667.

Plaintiff should make good his case at least by a preponderance of evidence. Bauer Grocery Co. v. Sanders, 74 Mo. App. 657; Chicago City R. Co. v. Fennimore, 199 Ill. 9, 64 N. E. 985; McDeed v. McDeed, 67 Ill. 545; White v. Mackey, 85 Ill. App. 282; Donley v. Dougherty, 75 Ill. App. 379; Leggett v. Ill. Cent. R. Co., 72 Ill. App. 577; Effinger v. State, 9 Ohio Cir. Ct. 376, 6 Ohio Cir. Dec. 417; Chapman v. McAdams, 1 Lea (Tenn.) 500; Telford v. Frost, 76 Wis. 172, 44 N. W. 835; Trott v. Wolfe, 35 Ill. App. 163; Chicago, etc., R. Co. v. Givens, 18 Ill. App. 404; Gage v. Eddy, 179 Ill. 492, 53 N. E. 1008; The Queen, etc. Mfg. Co. v. Mallory, 10 Blatchf. 140; Sayer v. Mead, 171 Pa. St. 349, 33 Atl. 355; Smith v. Slocum, 62 Ill. 354; Gibson v. R. Co., 164 Pa. St. 142, 30 Atl. 308; Graham v. State, 92 Ala. 55, 9 So. 530.

The certificate of acknowledgment is regular on its face. A strong presumption exists in favor of its truth, and the burden of proof rests on the party assailing it. 1 Cyc. 623 (B) 1 and 2 and cases cited; 1 Cyc. 624, b and cases cited; 1 Cyc. 625 (II) and cases cited.

Appellee was present when the deed in question was signed, and did not protest. He is estopped from asserting his claim. Note "Silent Acquiescence" in 7 L. R. A. at page 756 and cases cited; 16 Cyc. 770, c and d and cases cited; 20 Cyc. 434, 3 and cases cited.

Rodey & Rodey, of Albuquerque, for appellee.

It is strongly in evidence from the defendant's side that the deceased did not sign the deed but that the woman, Leonides, took his hand and inserted a pencil between his forefinger and middle finger, and then squeezed the two fingers together so as to hold

the pencil, and that he made his mark on the deed
with her guidance and help in that way.  Plaintiff's
side of the case denies this emphatically and says
that no such thing occurred, but that she simply took
the hand of the unconscious man and touched it to
the pen.  As to the formal requisites of a deed, see
8 R. C. L. p. 935, sec. 13 and citations.  As to the
mental capacity of persons who sign a deed, see 8
R. C. L. p. 946, sec. 22.

The best case in the books which counsel can find
for the enlightenment of the court in this case is that
of Barkey v. Barkey (Ind.), 106 N. E. 609, L. R.
A. 1915B 678.  See also Dunlop v. Dunlop, 10 Watts.
153.

On the question of delivery. 8 R. C. L. p. 978, sec.
48.

The grantor had only inherited an undivided one-
fourth interest in the property, and could therefore
only dispose of that much. 8 R. C. L. p. 1052, secs.
105, 106 and notes.

### OPINION OF THE COURT

FORT, J.  Isaac Garcia, as the sole heir of his
deceased partners, and as the administrator of the
estate of his father, Meliton Garcia, brought this action
against Primitivo Leal and Perfecta G. de Leal, his
wife, to quiet the plaintiff's title to certain described
real estate, and to cancel a certain deed dated Septem-
ber 30, 1921, conveying this property and bearing the
signature of Meliton Garcia, the deceased, by mark,
with a count in the alternative to recover the purchase
price for this land, should the deed be declared to be
valid.  The complaint alleges that no consideration was
paid for the land, and that the deed in question was
prepared by E. L. Vernier and brought by him to the
sick room of the grantor, who was then unconscious,
and shortly thereafter died without recovering con-
sciousness; that, notwithstanding his condition, Prim-
itivo Leal, one of the defendants, induced some one
present to attach the mark of the grantor, and pro-

cured the signature of witnesses to the deed, and the acknowledgment thereof by a notary; that the deed was left in the house of the plaintiff, and some two weeks, thereafter abstracted therefrom by Perfecta G. de Leal, one of the defendants, without permission or any right thereto, and recorded. The defendants denied the allegations of the complaint, and alleged that the deed was duly executed by the deceased while fully conscious, and that the full consideration therefor had been previously paid to the deceased. After hearing the evidence the court found that the grantor, Meliton Garcia, never in truth or in fact consciously signed or delivered the deed, and that no consideration was ever paid for the property described therein by either of the defendants; that at the time of the purported signing of the deed, the grantor was unconscious and not possessed of sufficient mentality to execute or deliver a conveyance of realty; and that the deed was void for want of consideration, and for want of execution and delivery. Upon these findings a decree was entered in favor of the plaintiff canceling the deed, and quieting his title to the property therein described, from which decree the defendants appealed. For convenience the appellants will also be referred to as the defendants, and the appellee as the plaintiff.

As stated in the brief of counsel for appellants, the assignments of error necessary to be considered in the decision of this case raise the question of the sufficiency of the evidence to establish the two material findings of the court to the effect: (a) That, at the time the alleged deed purports to have been signed and acknowledged, Meliton Garcia was unconscious and not possessed of sufficient mentality to execute or deliver a conveyance of realty, and, for this reason, the deed in question was never in truth or in fact consciously executed or delivered by him; and (b) that no consideration was ever in fact paid for the property by either of the grantees.

The testimony of the witnesses for the plaintiff and

the defendants was in direct conflict upon each of these matters. If the testimony of the plaintiff's witnesses was believed by the court to be true, and the conflicting testimony of the defendants' witnesses was rejected as untrue, the evidence was sufficient to authorize the trial court to make the findings in favor of the plaintiff and against the defendants, unless such testimony was of a quality and character insufficient to sustain the burden placed upon the plaintiff by the rules of law applicable to this case. The appellants contend that as a question of fraud was involved, and the deed was regularly acknowledged before a notary public under his official seal, more than a mere preponderance of the evidence was required to impeach this certificate, and set the deed aside. The brief of appellants' counsel contains a very exhaustive argument upon the facts, supported by elaborate citations of text-books and reported cases in support of his contentions.

[**1**] 1. Since the decree in favor of the plaintiff is based upon the findings of the court that the grantor, Meliton Garcia, at the time the alleged deed purported to have been signed and acknowledged, was unconscious, and not possessed of sufficient mentality to execute or deliver it, we will first consider this phase of the case. In Barkley v. Barkley, 182 Ind. 322, 106 N. E. 609, L. R. A. 1915B, 678, it was held that:

"A deed executed by using the hand of an unconscious person to make his mark on the paper at the place of signature is void."

And in Abee v. Bargas (Tex. Civ. App.) 65 S. W. 489, a deed executed by the grantor while wholly unconscious at the time and up to his death, was declared to be in effect a forgery, and void as to all who claimed title under it.

The deed in the instant case purported to have been executed on the morning of September 30, 1921. At that time, the grantor, Meliton Garcia, was suffering

from the effects of very serious injuries received on the evening of the 26th day of September, prior thereto, and from which he died early on the morning of Oct. 1st. The signature of the grantor was by mark, which was placed there with the assistance of Mrs. Leonidas Rael, and his name was signed thereto by E. L. Vernier, who had prepared the deed at the request of either the plaintiff or defendant on September 29th, and brought it to the chamber of the sick man shortly prior to the time of its alleged execution. The deed bore a certificate of acknowledgment signed by J. M. Sandoval, as notary public under his seal of office.

The witness Vernier testified that he was postmaster at Sandoval; that Meliton Garcia had on several occasions in August and September, 1921, requested him to prepare a deed conveying the property in question to Primitivo Leal, and another deed conveying certain property to the plaintiff, and that on September 29th, Primitivo Leal came to his house and wanted him to prepare the deed, as Meliton Garcia was very sick; that he prepared both deeds, and on the next day took them to the house of Meliton Garcia; that the notary public stated to Meliton Garcia that "there was the deed," and asked "if he would accept it"; that Meliton Garcia did not answer anything, and did not say a word, but was lying there with his eyes closed, and that Mrs. Leonidas Rael placed the mark of Meliton Garcia upon the deed and he signed the grantor's name thereto, and his own name as a witness, and the other subscribing witnesses then attached their signatures, and the notary attached his seal; that the grantor, since deceased, could not speak at the time, and was lying down with his eyes closed and could not move. In answer to the question, "Did this Leonidas that put this cross on the deed, did she in any manner touch his hand to the pen or touch the pen to his hand, or how?" he answered, "He put the pen on the hand, and then after he put the pen on his hand, then she put the cross;" that he saw no consideration passed for the deed; that he signed the grantor's name to

the deed and attached his own signature as a witness, because the grantor had no several occasions told him that he intended to make such a deed, and had requested him to prepare the same.

Leandro Griego, another subscribing witness, corroborated the testimony of Vernier as to the circumstances attending the execution of the instrument, as did also the plaintiff and his wife. There were other witnesses as to the unconscious condition of Meliton Garcia during the day on which the deed was alleged to have been executed and prior thereto, who testified that he was practically unconscious and helpless during the greater portion of that time.

J. M. Sandoval, Jr., the notary who took the acknowledgment, testified for the defendants substantially as follows: That on September 30th, he was met at the postoffice by Primitivo Leal and Isaac Garcia and thas Isaac said, "We are looking for you;" and upon being asked what was wanted, Isaac said, "We are looking for you to take an acknowledgment from my father, for deeds that he made to us;" that the notary desired a sufficient time to go to his house for his seal, but Isaac said, "No, you better take said acknowledgment right away without signing it, and afterwards you can bring the seal and seal it," to which he answered: "That is all right;" that he then went to the house of Meliton Garcia with Isaac and Primitivo, and when he entered, found the wives of Primitivo and Isaac Valentin Leal, Leandro Griego, E. L. Vernier and Dona Leonidas Rael; that, when he arrived, he went in and saw Meliton Garcia in bed propped up and resting upon pillows, and said to him, "How do you do, Meliton?" to which the sick man replied, "I am a little sick;" that he took the deeds from Vernier, who, he saw, had them, looked at them, and saw that they were from Meliton Garcia, the one to his son Isaac and the other to Primitivo Leal; that he took them in his hands, stood right by the bed and said, "Meliton, is it you will that these deeds should be signed?" to which he replied, "Yes,

sir;'' that he took the deeds and placed them on his knees, and Mr. Vernier said to Mrs. Leanidas Rael to take hold of the pen, to give it to him, which she did; that he tried to raise his hand to pick it up—it was impossible, he could not do it; that he then told Mrs. Leonidas Real to take hold of the pen and put it in his fingers, which she did; that she then got him to put a cross upon the documents, on one first and then on the other, and the witnesses started to sign on one side; that Mr. Valentin Leal signed first; that Mr. Vernier signed the grantor's name and also signed Leandro Griego's name to it, and Leandro affixed his cross; that after all had signed, the deeds remained in the hands of Mr. Vernier; that he went to his house and brought his seal and found the deeds over in the postoffice; that Mr. Vernier gave him the deeds, and he put his seal upon them, and delivered one to Isaac, Garcia and the other to Primitivo Leal, who were there at the postoffice to receive them; that the delivery of the deeds was about two hours after they were signed; that from his conversation with Meliton Garcia after explaining the papers, it was his opinion that he knew what he was doing.

The defendant and his wife, and Mrs. Leonidas Rael, corroborated the testimony of the witness Sandoval in all material respects. Dr. A. Davis, who attended him as his physician about noon on September 29th, testified that Meliton Garcia was then suffering from a fractured leg, was cut by three broken ribs on his right side, and was suffering from internal injuries; that the muscles of his right arm were injured, and that he could not have used his arm and could not have signed an instrument legibly; that he was suffering from a high fever and seemed to be sleeping quite a bit with it, although when roused up, he would answer rationally.

Father Lammert, the priest who received the confession of the sick man on the night of September 30th, prior to his death on the following morning, stated that he went to the house of Meliton Garcia

for the purpose of hearing his last confession, and
talked to him at that time; that he made his confession in a way; that Meliton did not speak to him;
that he was called into the room and spoke to him;
that the sick man looked at him and he thought
recognized him; that the rest of the people left the
room, and he tried to hear his confession, but the
sick man could not make a verbal confession because
he was speechless; that he was conscientiously sure
that the sick man was conscious—

"because of the questions I put to him, he would look at me
and nod at me. Then there were moments when he would
look off, shut his eyes, tired or sick or whatever it was. I
would allow him to rest a few moments and then direct again
a question to him and he would look at me, and he would
shake his head or move so that induced me or persuaded me
that he was conscious. * * * I am conscientiously sure that
he understood me and he was conscious, understood what I
was asking him and he would nod or shake his head, the
other way, and then he would lapse so that occasionally I
would have to give him time."

The trial court, who heard these witnesses testify,
evidently believed the testimony of Vernier and the
other witnesses who corborated him, and rejected that
of Sandoval and the witnesses who corroborated him.
The evidence on behalf of the plaintiff, if true, was
sufficient to support the findings of the court in his
favor, unless the rules of law applicable to a case of
this sort require a greater quantum.

[**2, 3**] 2, 3. The appellants contend that since the
deed was regularly acknowledged before a notary public under seal, who testified in support of his certificate of acknowledgment, a strong presumption exists in favor of its truth, and the burden of proof to
overcome this presumption rests upon the party assailing it; and the proof to impeach such a certificate
must be clear, strong, convincing, and conclusive as to
its falsity; and it is earnestly insisted that the evidence
on behalf of the plaintiff here did not furnish the
quantum of proof necessary to overcome it. The question of the probative value of a certificate of acknowl-
edgment, and the quantum of evidence necessary to

overcome the presumption of the truth of the facts cer-
tified therein, has been often before the courts, and
there is great diversity of expression in the many de-
cisions relative thereto. The rules stated in these
opinions with respect to the probative force or weight
to be attached to such certificates are diverse and con-
flicting, but this dissention is often more verbal than
substantial. In 1 C. J. p. 896, it said:

"With one possible exception, the courts are all agreed
that a bare preponderance of evidence is not sufficient to
overcome the presumption in favor of a certificate of ac-
knowledgment regular on its face," and that it ''can be over-
thrown only by evidence so clear, strong, and convincing as
to exclude all reasonable controversy as to the falsity of the
certificate."

An examination of the cases cited in support of the
text discloses that many of them do not go quite so
far. A more accurate statement of the rule of law
in this regard is found in 1 R. C. L. p. 297, and is
as follows:

"The decisions disclose a very decided tendency on the
part of the courts to attach weight to certificates of acknowl-
edgment and to view attempts to discredit them with suspicion
and distrust. It frequently has been stated as a rule that in
order to impeach a certificate the evidence must be clear,
cogent, and convincing beyond reasonable controversy. In-
deed, it has been said that it must be almost as strong as that
required to correct a mistake in a deed. Thus it appears that
the burden assumed by the assailant of the certificate is,
if the language of the rule is to be understood in its literal
sense, much greater than that usually cast upon a party by
a presumption of fact. It is apprehended, however, that there
is in this case no departure from the ordinary rules respect-
ing the determination of issues of fact, and that the jury
should not be instructed as if such were the case . The truth
is that the evidence adduced to contradict certificates of ac-
knowledgment very seldom is clear, cogent, and convincing.
The principal witnesses almost always are deeply interested
in the result, and very often, by their delay to complain
promptly, they have subjected their own fairness and even
their credibility, to suspicion. The rule in question is ex-
pressive merely of this state of facts and should not be held
applicable under other circumstances."

Some of this diversity of opinion arises from the
fact that in some jurisdictions the ceremony of ac-
knowledgment by the officer is considered as judicial

in character, while in others it is only considered to be a ministerial act. In the former jurisdictions, the quantum of proof is usually considered to be the same as that required to overcome a judgment, but in all, because of the serious injury which might accrue to the general public by making record titles insecure, it is generally considered that the proof to set aside a deed when duly and regularly acknowledged before a proper officer should be strong and convincing. In many states the acknowledgment of a married woman is required to be taken separately and apart from her husband, and as this form of acknowledgment is said to have been a substitute for the proceeding of fine and recovery at common law, which took place in open court, the act of taking the acknowledgment is considered to be judicial. Kerr v. Russell, 69 Ill. 666, 18 Am. Rep. 634; Hitz v. Jenks, 123 U. S. 297, pp. 301, 302, 8 S. Ct. 143, 31 L. Ed. 156. And a like result as to the character of the officer's act has by analogy been extended to acknowledgments in general.

"But the weight of modern authorities, and certainly the better reasoning, pronounce the duties performed in taking an acknowledgment to be ministerial rather than judicial." 1 R. C. L. 254, § 6.

In many states the statutes require deeds to be acknowledged. Such was the law in this state prior to 1901. Compiled Laws 1897, § 3943. This provision was repealed by chapter 62, § 32, Laws 1901. Hayden v. Speakman, 20 N. M. 513, pp. 519, 520, 150 P. 292. Our present law requires that all conveyances of real estate shall be subscribed by the person transferring his title or interest or by his legal agent or attorney. Code 1915, § 4760. And a certificate of acknowledgment is only necessary for the recordation of such deeds, and the protection of the grantee against subsequent purchasers in good faith and without notice. Code 1915, §§ 4788, 4791, and 4795. Acknowledgments taken as required by law are prima facie evidence of the execution of the instrument acknowledged in all courts of this state. Code 1915, § 11. But neither the certificate of acknowl-

edgment nor the record or a transcript of the record
of the instrument acknowledged, shall be conclusive,
but may be contested. Code 1915, § 4793. Chapter
82 of the Laws 1921 provides that a notary public
who is also a stockholder, director, officer, or em-
ployee of a corporation, may take the acknowledgment
of any party to any written instrument executed to or
by such corporation, except where such notary is a
party to such instrument, either individually or as a
representative of the corporation. It has also been
held by this court in Genest v. Las Vegas Masonic
Building. Association, 11 N. M. 251, 67 P. 743, that:

"An attorney at law who is also a notary public in New
Mexico may take the affidavit of his client, or of his client's
agent, upon which service of process by publication is based,
it having for many years been the practice in New Mexico to
do so and there being nothing in the law to prohibit it."

Since acknowledgments of bonds, recognizances, and
corporate deeds are in the form affidavits, we can
see no reason why a notary, who is the agent or at-
torney of either or both of the parties to a convey-
ance, is not authorized to take such acknowledgments;
and if so, then also the ordinary form of noncorporate
acknowledgments to an instrument in which he was
not a party, either individually or in a representative
capacity. From these provisions of our law it would
seem that the notary's act in taking a certificate of
acknowledgment is, in this state, ministerial and not
judicial in character. There are numerous expressions
characterizing the quantum of proof necessary to over-
come the presumption in favor of the truth of a cer-
tificate of acknowledgment in many opinions from the
courts of the several states. The following expressions
have been used in connection with the degree of proof
required for this purpose: "Clear and convincing,"
"clear and satisfactory," "clear, cogent, and convinc-
ing," "clear, exact and convincing beyond a reasonable
doubt," "so clear and convincing that it has not the ap-
pearance of being prompted by interest or selfish mo-
tives," clear, convincing, and satisfactory, establishing
the defense beyond all reasonable controversy," "clear
and convincing and must overcome to a moral certain-

ty.'' These and many others will be found in the case
note to People's Gas Co. v. Fletcher, 81 Kan. 76, 105 P·
34, as reported in 41 L. R. A. (N. S.) 1161, in the third
division of this note entitled ''Degree of Proof Re-
quired.   (a) In General,'' at page 1176 et seq. In
some of the cases it is held that the unsupported testi-
mony of the interested witnesses, or of the grantor
alone, is insufficient to overcome the certificate.   Id
41 L. R. A. (N. S.) p. 1178 b. While the statement
of the quantum of proof is thus variously expressed,
it will be seen that the conclusions reached in most of
these cases were based upon a discussion of and con-
clusion reached from the testimony in each particular
case, from which it will appear that the facts there
set out, rather than the rule of law, determine the
decision of the court.   In the case of People's Gas
Co. v. Fletcher, supra, the court held:

"A certificate of acknowledgment   made by an officer
authorized to take acknowledgments is only prima facie evi-
dence of the execution of the instrument, and, while it is en-
titled to a strong presumption in favor of its truth, it may
be impeached by parol testimony."

While in some of the cases it is held that the testi-
mony of the grantors alone is not sufficient for this
purpose, in the case just cited it is held:

"Where the parties have actually appeared and signed
an instrument, and, afterward attempt to contradict the cer-
tificate as to what took place, the evidence to impeach the
acknowledgment must be clear and convincing *** But where
the parties deny the execution of the instrument and claim
neither to have signed nor acknowledged it, their testimony
is admissible to impeach the certificate and will be entitled
to as much weight as that of any other interested witness "

In American Freehold, etc., Co. v .Thornton, 108
Ala. 258, 19 So. 529, 54 Am. St. Rep. 148, there is
a very clear and able discussion in the case note there-
to by Judge Thompson, at pages 150 to 159, inclusive,
wherein, after discussing the question   and   citing
authorities at page 157, he states:

"Nevertheless, in our judgment, the weight of evidence
in cases of this class should not be affected by any rules
peculiar to the subject, and the jury, or court acting as such,
should be left to determine from all the circumstances dis-
closed whether or not the certificate of acknowledgment is

false, and that as against such certificate the evidence of the grantor or of any interested party should be regarded as sufficient to overcome it, when such testimony produces a conviction of its truth and of the falseness of the certificate."

We approve the above statements as the correct view of the law as to this question in this state. For a discussion of these and other related questions relative to the conclusiveness of the probative value of acknowledgments, and the nature of the proof required to overcome them, See Ford v. Ford, 27 App. D. C. 401, 6 L. R. A. (N. S.) 442, 7 Ann. Cas. 245, and note; Wester v. Hunt, 123 Tenn. 508, 130 S. W. 842, Ann. Cas. 1912C, 329, 30 L. R. A. (N. S.) 358, and note; note to People's Gas Co. v. Fletcher, supra; Houlihan v. Morrissey, 270 Ill. 66, 110 N. E. 341, Ann. Cas. 1917A, 364, and extensive case note thereto, wherein many of the later authorities are collected. The cases of People's Gas Co. v. Fletcher, supra, and Houlihan v. Morrissey, supra, very clearly represent two conflicting views upon the greatly controverted question as to the sufficiency of the evidence of interested witnesses alone ·to impeach such a certificate. In the instant case the court heard the testimony of all the witnesses, observed their manner of testifying, and exercised the function devolving upon him as trial judge of weighing their testimony and determining their credibility. This testimony was sufficient to clearly convince him of the truth of plaintiff's case, and, if the testimony of plaintiff's witnesses was true, as found by the court, the evidence is clear and convincing of the facts that the grantor did not consciously execute or deliver the deed, and that the notary's certificate to the effect that the grantor personally appeared before him and acknowledged that he executed the same as his free act and deed, was false. Since, in our opinion, there was very clear and very convincing testimony to support the findings of the trial court, if he believed such testimony, we will not disturb his findings in favor of the plaintiff.

[**3, 4**] 3, 4.  Upon the question as to whether any

consideration had been paid by the defendants to Meliton Garcia, the evidence introduced by the plaintiff and defendants is likewise in direct conflict. The defendants testified that such consideration had been paid in cash some nine months before the execution of the deed, with currency which had been kept in the grantees' house for some four years; that no receipt was taken for this money, and that only they were present, and neither of them had ever mentioned such payment to any other person except their attorney in this case. The plaintiff and his wife lived with Meliton Garcia, the grantor, and they testified that they had never heard of any such payment. Shortly prior to the time the payment was alleged to have been made, Meliton Garcia and the plaintiff borrowed the sum of $2,000 upon certain lands, including the land described in the deed in question, no part of which was repaid by Meliton Garcia in his lifetime; and several witnesses, including the plaintiff and his wife, testified that the defendant Primitivo Leal had admitted on various occasions that he had not paid for the land, but would do so. The evidence shows that there had been a contract of some sort for the sale of this land by Meliton Garcia to Primitivo Leal, and that Meliton Garcia had so stated at a ditch meeting some months previously; that Vernier had been requested by him to draw such a deed of conveyance; but neither the amount of the consideration nor the terms of the deed were ever mentioned; and, confessedly, the consideration named in the deed was not the one agreed upon, nor was such consideration paid at the time of the execution of the deed. Furthermore, the plaintiff and his wife testified that the deed had never in fact been delivered, but was abstracted from their premises by Perfecta G. de Leal, the wife of Primitivo Leal, one of the defendants. Whether the fact that the consideration named in the deed was not the real consideration thereof, and the further fact that no consideration actually passed at the time of the purported execution of the deed, placed the burden upon the defendants to establish such payment, we

are not called upon to decide, as in any event there was substantial evidence to sustain the finding of the trial court that no consideration had in fact been paid for such conveyance.

[**5, 6**] 5, 6.   Appellant also urges that because of the fact that another deed was made to the plaintiff at the same time, and that plaintiff was present at the time. the defendant's deed was executed, and apparently acquiesced therein, he is estopped from attacking this conveyance. No estoppel is pleaded by the defendants, altho full opportunity was accorded therefor, since the plaintiff set out not only the source of his title, but also fully described the deed sought to be canceled and the grounds for such cancellation.   It is a general rule that an estoppel, to be available, must be specially pleaded, if there has been an opportunity for so doing.   10 R. C. L. 842.   Nor does the present case come within the exception set out in Hoskins v. Talley (N. M.) 220 P. 1007, which holds that an estoppel need not be pleaded ''in a suit to quiet title, where the plaintiff does not set forth nor plead in his complaint the precise claim of the title which will be relied upon, nor the muniments establishing the same.''   In the opinion in this case at page 1010, it is said:

"The reason which underlies such exception is that ordinarily a plaintiff in ejectment is not required to plead the title upon which 'he relies for his right of possession, and the facts upon which he relies to establish such title are unknown to the defendant until proof is submitted."

This exception should be limited to the reason which gives rise to it, and if it is desired to urge an estoppel against a claim which has been specifically alleged, the facts constituting such estoppel should be pleaded. 10 R. C. L. 843.   Besides this, it is not even alleged that plaintiff paid any present consideration for the deed, or parted with any valuable consideration at the time of or subsequent to its execution, or that he was in any other manner injured by the acquiescence of the plaintiff.   See, in this connection, Oliver v. Enriquez, 17 N. M. 206, 124 P. 798.   It is true that de-

fendants claimed to have made some slight improvements on the land, and to have been in the possession thereof. Such claims, however, were denied by the plaintiff. Even if true they would rather constitute a claim of equitable title to the premises in dispute arising by reason of the contract, possession thereunder, and the full payment of the purchase price therefor, which was not pleaded by the defendants in this case. There is therefore no merit in defendants' claim that the plaintiff was estopped. See, in this connection, Dye v. Crary, 13 N. M. 439, 85 P. 1038, 9 L. R. A. (N. S.) 1136.

While errors were assigned upon the refusal of the court to make certain findings of fact relative to admissions of Meliton Garcia that he had contracted to sell this land to defendants, and to references in descriptions of deeds made by the plaintiff wherein he had referred to this land as that of defendants, such admissions were necessarily considered by the court upon the question of the payment of the consideration, and such references in these descriptions could in no way estop plaintiff, and the court did not err in refusing to make such findings.

Since the findings of the court are sufficiently supported by substantial evidence, the judgment of the court is affirmed; and it is so ordered.

PARKER, C. J. and BOTTS, J., concur.